Norma Jean **BASHOR** and Nancy Ann Bozarth, Plaintiffs-Appellants,

v.

Roger L. **TURPIN** et al., Defendants-Respondents.

No. 57458.

Supreme Court of Missouri, Division No. 1.

March 11, 1974.

Strop, Watkins, Roberts & Hale, by Dan Hale, St. Joseph, for plaintiffs-appellants.

Robert B. Randolph, St. Joseph, for respondents.

WELBORN, Commissioner.

Appeal from judgment of circuit court in matter which began in probate court, arising out of citation for discovery of assets and petition of devisees to disallow expense items claimed by executor on his settlements. In circuit court, proceeding was expanded to include action to set aside deed conveying real estate from Gertrude Turpin, decedent, to her son, Roger L. Turpin, executor of his mother's estate, and his wife. Decree of circuit court on this issue was against plaintiffs, Norma Jean Bashor and Nancy Ann Bozarth, daughters of deceased. Plaintiffs have appealed from decree on that issue and also from judgment of trial court on other issues, to be more fully discussed below.

Gertrude Turpin was the widow of Sanford Turpin, who died in 1956. The Turpin family lived on a 90-acre farm in Buchanan County, four or five miles south of Rushville, on which Sanford Turpin's father, Napoleon Turpin, had previously lived. There were four Turpin children living at the time of their father's death. The oldest, Gerald, was married and lived in Rushville. He was employed as a welder. The second, Norma Jean, one of the plaintiffs, was married and lived on a 69-acre tract owned by her father, across the road from the home place. She and her husband left the place "by request" in

1957. They lived at several different places in the vicinity and at the time of her mother's death, at Effingham, Kansas, about 30 miles from the home place. The third child was Roger, who was 18 at the time of his father's death and in his last year of high school. Roger married in 1957 and from that time until the death of his mother, lived on the 69-acre tract where Norma Jean and her husband had lived. The fourth child was a daughter, Nancy Ann, who was 13 or 14 years of age at her father's death. Nancy Ann lived with her mother at the home place until she married in 1964. Nancy Ann returned to live with her mother in December, 1967, until her death March 15, 1968.

Upon the death of his father, Roger took charge of the farming operation on the land which his father had farmed and of which his mother became the owner. In addition to the 90-acre home tract and the 69-acre tract across the road from the home tract, there was a 17 or 18-acre tract in Platte County of good river bottom land and a 148-acre tract in Platte County, near the river, which included considerable accreted land. Roger received some incidental assistance from his brother and from Norma Jean's husband early in the farm operation, but Roger had the responsibility for the operation and made the necessary decisions. His mother was raised in town, knew nothing about farming and left the entire operation to Roger. In addition to running the farm operation, Roger looked after his mother's personal needs, taking her to town, getting groceries for her, looking after her needs for fuel and water at her home. Roger handled the financial affairs of the farm operation, his mother giving him checks which she signed in blank and Roger filled in the payee and amount.

In 1965, Mrs. Turpin became ill and was admitted to a hospital where a diagnosis of cancer of the colon was made in August or September, 1965, and an operation performed for removal of a part of her colon. Her malignancy was metastatic, requiring a second hospitalization from January 11 to 28, 1967, during which time an exploratory abdominal operation was performed which showed metastasis throughout her abdomen. A marked hearing defect due to otosclerosis was also noted at that time. She was rehospitalized from August 24, 1967 to September 9, 1967, during which time she received deep therapy. From November 24 to December 16, 1967, she was again hospitalized, after sustaining a fracture of her right hip. She was again admitted to the hospital on March 7, 1968 and died there on March 15 from metastatic carcinoma. Following the January, 1967 hospitalization, Mrs. Turpin received medication for pain. In some instances the medication was administered by injection and Roger made the injections. After Nancy Ann moved in with her mother following the December, 1967 hospitalization, she administered some of the medication, but by and large she called on Roger, even calling him to come over for such purpose in the middle of the night.

In February, 1967, Roger went to the Rushville State Bank, where Roger and his mother did their banking business, and spoke to the bank president about obtaining a $7,000 loan to buy the home place from his mother. The bank president got in touch with the bank's attorney, William Morton, Jr., of St. Joseph, and told him that the Turpins would be in to see him about the sale of the property. Morton obtained an abstract of title to the property and had examined it when Roger and his mother came to Morton's office on February 6, 1967. Roger told Morton that they wanted him to prepare a deed from his mother to him for the home place. The purchase price was to be $7,000 and Roger was to give his mother an unsecured promissory note for that amount, payable in six months. According to Morton, Mrs. Turpin told Morton that the terms Roger mentioned were correct and Morton prepared a warranty deed and a note which was executed by Mrs. Turpin and Roger. The deed was left with Morton and he filed it for record. Morton gave the $7,000 note

to Mrs. Turpin and it was not seen thereafter. According to Morton, Mrs. Turpin appeared to be rational and of sound mind and physically all right. She walked without assistance and did not appear to suffer from pain.

On June 6, 1967, Mrs. Turpin executed her will, which had been prepared by her attorney, Lewis Randolph, Jr. Mrs. Turpin had consulted Randolph on legal matters frequently, beginning in 1963. Roger brought her to Randolph's office, but she did her own business and Randolph found her mentally alert and exercising good business judgment. She had a hearing defect and sometimes wore a hearing aid, but she and Randolph "could make each other understood."

Mrs. Turpin's will was filed in the Buchan County Probate Court March 20, 1968. The will devised the 69-acre tract across from the home place to Nancy Ann. The 17 or 18-acre Platte County tract was devised to Roger and the other Platte County land to Roger and Gerald as tenants in common. A bequest of $7,000 cash was made to Norma Jean. The farm machinery was bequeathed to Roger and Gerald and the household goods and automobile to Nancy. A one-half interest in a cattle herd owned jointly with Roger was divided equally among the four children.

Clause 10 of the will provided:

"10. In the first part of the year 1967, I sold to my son, Roger L. Turpin, approximately ninety (90) acres of real estate located in Buchanan County, Missouri. As part of the purchase price, he delivered to me his promissory note in the amount of Seven Thousand Dollars ($7,000.00), payable according to the terms of said note, drawing six per cent (6%) interest. In the event I die before said note is paid, I direct that no interest shall be charged on this debt and that the only amount of money due and owing me from my son Roger L. Turpin is the Seven Thousand Dollars ($7,000.00)."

Roger was named executor of the will. At the suggestion of the Rushville bank president, Roger employed Morton as attorney for the executor. The inventory and appraisal of the estate, filed May 1, 1968, valued the 69-acre tract given Nancy at $13,800, the 17 or 18-acre Platte County tract at $5,631 and the 148-acre tract at $44,469.00. The personal estate was valued at $32,099.81, including household goods, valued at $302, bank accounts, $19,080.81, farm equipment and cattle $5,717 and:

"Promissory note of Roger L. Turpin, payable to Decedent six months from date, dated February 6, 1967, providing for interest at the rate of 6% per annum                                  $7,000.00."

On March 20, 1968, Morton wrote each of the four children, sending a copy of the will, noting in his letter the sale of the home place to Roger and explaining the note referred to in Clause 10 of the will as the note given in payment of the purchase price on that transaction. According to the daughters, that letter was the first notice they had of the sale. Gerald had known of it, having seen a report of the transfer in a newspaper.

Although there was some hint of antagonism between Roger and his sisters prior to that time, the reading of Morton's letter and the copy of their mother's will caused the daughters to ask Roger and Morton what was the additional consideration for the sale of the home place, since the will referred to the $7,000 as "partial payment." According to the sisters, Roger avoided giving a direct answer to their questions and they could not obtain a satisfactory answer from Morton. Morton eventually advised the sisters to obtain their own legal counsel and they did so in the fall of 1968. Thereafter, the sisters filed a petition in the probate court for the removal of Roger as executor of his mother's estate. They also filed objections to the settlements filed by Roger, objecting to certain items of expenditure for which he took credit.

Roger and his attorney, Morton, also had problems, leading to a filing by Morton in January, 1969 of a request for permission to withdraw as attorney for the executor. Among the reasons cited for the request was the refusal of Roger to deliver the $7,000 note. Morton was permitted to withdraw and Roger employed new counsel.

On May 28, 1969, Norma Jean and Nancy filed an affidavit to discover assets in the probate court, alleging that Roger was concealing the contract for sale of the 90-acre tract, the $7,000 note and the part of the purchase price not represented by the note. The probate court, in response to the affidavit, issued a citation to Roger, directing him to answer interrogatories propounded to him. After interrogatories had been propounded and answered, Roger, as executor, moved for transfer of the matter to the circuit court for jury trial. The request was granted and the matter transferred in December, 1970.

Both the executor and the sisters had previously filed appeals in the circuit court from an order of the probate court of April 28, 1970, denying the petition for removal of Roger as executor, and ruling on objection to the allowance of items claimed by the executor on his semi-annual settlement.

On January 7, 1971, Norma Jean and Nancy Ann filed a four-count petition in the Buchanan County Circuit Court against Roger as executor and individually, and his wife. Count I sought a judgment in favor of Nancy Ann for $486 for rent for 1968 of the property devised to her which had been paid to Roger and deposited to the credit of the estate. Count II sought judgment by Nancy of $523.77 for her share of the 1968 ASCS payment received by Roger. Count III sought to set aside the conveyance to Roger of the home place on the grounds that the deed was obtained by Roger in violation of the trust reposed in him and by overreaching his mother, because Gertrude Turpin did not understand what

she was doing, and because the deed was executed because of misrepresentations made by Roger. Count IV sought injunctive relief relating to a road into the tract inherited by Nancy Ann. Roger filed a claim against Nancy for conversion of hay valued at $800. The latter two matters are not involved in this appeal.

The circuit court consolidated all of the matters pending before it involving the Turpin estate and set for separate trial the issue of the validity of the deed and discovery of assets and directed that trial of such issues be before an advisory jury. Prior to the trial of these issues which began April 14, 1971, the court sustained the motion of the sisters for the removal of Roger as executor and the appointment of an executor pendente lite.

After a 2½-day trial, the trial court made the following order:

"Let the record show that the Court finds that there was a confidential relationship existing between Gertrude Turpin and Roger Turpin on February 6, 1967. That there was an executed contract for the sale of land for the express consideration of $7,000.00, for a $7,000.00 promissory note, which has been paid in full. That there was no other consideration in the form of money or property for the sale, and the Court denies the Petition to Discover Assets. Now, we then go—the other question I will reserve until I get the answer from the jury."

The court stated that the issue of fair market value of the property at the date of the sale would be submitted to the jury. This was done and the jury returned a verdict that the fair market value of the property was $10,000 on February 6, 1967. The court accepted such finding and found further:

"The Court further finds the consideration of Seven Thousand Dollars ($7,000.-00) paid by Roger L. Turpin to his mother Gertrude G. Turpin was not grossly inadequate.

"The Court further finds that Roger L. Turpin did not overreach his mother, and that he did not perpetuate (sic) a fraud on his mother or sisters and that the transaction entered into between Gertrude G. Turpin and Roger L. Turpin to be fair and equitable in every respect."

The court then entered judgment in favor of defendants and against plaintiffs on the count to set aside the deed. That judgment is one of the subjects of the appeal now under consideration.

The appellants' contention here is summarized in their brief as follows:

"Where the grantee is in a position of confidence with the grantor, and the grantee actively acquires a deed to the farm from his mother who was elderly and infirm, and the grantor's will contains language about the sale of the farm contrary to the statements of the grantee, who is executor, coupled with disappearance of evidence connected with the alleged sale: Undue influence is shown and the deed must be set aside."

■ This is a review of an equity case, in which, as appellants point out, this court makes its own review of the evidence and arrives at its independent conclusion as to the facts, giving due deference to the trial court's superior opportunity to resolve questions of credibility of witnesses. Cull v. Pfeifer, 307 S.W.2d 424, 428[5] (Mo. 1957); Mintert v. Gastorf, 417 S.W.2d 101, 105[1] (Mo.1967).

There is no necessity to repeat here the principles of law here applicable. A recent summary of the guiding principles is to be found in Steller v. Steller, 401 S.W.2d 473, 477–478 (Mo.1966).

■ Review of the evidence in the light of these principles leads to the conclusion that the trial court correctly decided the issues and properly refused to set aside the deed. There is little doubt of the existence of a confidential relationship between Roger and his mother. However, plaintiffs have failed to sustain the burden, still upon them, to show that Roger took advantage of such relationship to impose his will upon his mother. Among significant items of evidence not referred to in the above recital of the facts was testimony from both the daughters and Gerald that their mother called the family together for discussions of what she should do with her property. Although the testimony of the daughters as to the nature of such discussions was less explicit than that of Gerald, it is clear that such discussions included an offer to sell the home place to each of them. Norma Jean testified that her mother offered to sell her the home place, but she didn't want it, she wanted cash. Nancy Ann testified that her mother offered to sell the place to her, but she did not take up the offer. Gerald testified to such meetings and that at one, attended by his sisters, his mother said: "I think I am going to sell the home place to Roger." Gerald confirmed that when the place was offered to Norma Jean, she said she would like to have something else "like money."

In the face of this evidence it can hardly be said that the sale of the farm to Roger was Roger's idea. Roger did make the arrangements which eventually led to the actual transaction, but the evidence clearly points to the sale to Roger as Mrs. Turpin's idea.

As for Mrs. Turpin's being "elderly and infirm," she was 62 years old at the time of the sale. While she was not in good physical condition, even plaintiffs acknowledged that her mental faculties were keen and her business judgment unimpaired. All of the evidence so indicated, so that this is not a case of dealing with a person who could not have been expected to understand the transaction.

Appellants attempt to use this situation to their advantage by saying that her faculties were also unimpaired when she executed her will and stated in it that the $7,000 note was "part of the purchase price." Appellants assert that such statement would not have been made had their

mother not known of additional consideration which she had in mind when she executed the will. That statement led to the insistence of the daughters that there must have been a contract of sale in which the additional consideration was stated. However, Morton, who handled the transaction, testified that he prepared two instruments, a deed and a note. The nonproduction of the note following Mrs. Turpin's death enhanced the sisters' suspicions. Norma Jean testified that at one time, Roger said: "If you can't find the note I don't owe it." There was no evidence that Roger made any real effort to avoid paying the note. He directed Morton to include the note in the inventory and the evidence showed that in October, 1969 Roger borrowed $7,000 from the Rushville bank which was deposited to the credit of the estate of Gertrude Turpin.

As above noted the only evidence that was shown to have disappeared was the note. The lawyer who prepared it testified to its contents. The will confirmed his statement as to the amount of the note. The note was paid. There is no evidence whatsoever that other than the deed and note, any other document was prepared for the transaction and therefore the claimed "disappearance of evidence" can have no bearing on the proof of undue influence.

Appellants did produce a realtor at the trial who testified that the value of the 90 acres at the time of the sale was $27,000 and apparently that figure struck Norma Jean as of import in connection with the statement in her mother's will. She testified:

"Q (By Mr. Randolph, continuing) You claim that more money is due from Roger than $7,000.00 for the purchase of this farm?

"A Yes, sir.

"Q How much more?

"A I would say twenty-seven thousand.

"Q This is your opinion?

"A Yes, sir.

"Q Based upon what?

"A Based upon my knowledge of what land is selling for because I have been looking for small acreage to buy myself.

"Q What else is it based on?

"A That's all.

"Q Just your opinion and your opinion alone?

"A My opinion and my sister's, yes.

"Q As to the value?

"A Yes."

If the language of the will needs explanation, such explanation is to be found in the testimony of Mrs. Turpin's sister that Mrs. Turpin told her, with regard to the 90 acres: "She wanted Roger to have it because Roger had been so good, so faithful, and so honest and * * * could take care of the farm." The evidence established clearly that Mrs. Turpin had every reason for such feeling toward Roger.

Appellants place considerable emphasis upon the testimony of Norma Jean of a visit to her home in Kansas by Roger and his mother on February 9, 1967, at night, at which Roger had maps of the Platte County land and was demanding of his mother to know who was going to get that land, and on Roger's refusal to use a bulldozer, which he and Gerald bought in 1966 and used to clear the 90-acre tract, on the 69-acre tract, saying, according to Norma Jean, "Well, why should we put in all this work when we don't know what we are going to get." Such isolated incidents as these hardly rise to the level of proof of undue influence. Mrs. Turpin was concerned for some time about disposing of her property and Roger had reason to be concerned, since he was the one child whose means of livelihood was directly related to the real estate. There was, in fact, evidence that the trip to Norma

Jean's was occasioned by Norma Jean's failure to heed her mother's request to come to her home to discuss the disposition of the property.

There are other considerations which favor the conclusion of the trial court and of this court. The transaction was not kept secret. The deed was promptly recorded. The sisters testified that they knew nothing of the sale until their mother's death. Gerald heard about it and also read of the transfer in the newspaper. The neighbors heard "talk" in the community of the sale. Contrast this situation with that in Steller v. Steller, supra, cited and relied upon by appellants, where the deed in question had been dated May 15, 1958 and recorded February 28, 1961, after the grantor's death.

Appellants have not here argued against the finding of the advisory jury that the value of the land at the time of sale was $10,000. As above noted, appellants produced evidence of a $27,000 value and respondents of a value of $10,000. The jury accepted that evidence and found accordingly. The trial court's finding was that the $7,000 consideration was not "grossly inadequate," in view of the jury verdict. The presence of such consideration distinguishes this case, along with numerous other factors, from Davis (Conn) v. Neeley, 409 S.W.2d 116 (Mo.1966), cited and relied upon by appellants, in which the court, at the instance of the grantor, set aside for undue influence a deed and a gift of a bank account for which the grantee paid no consideration. Cull v. Pfeifer, 307 S. W.2d 424 (Mo.1957), also involved conveyances without consideration and many other factors completely distinguishing that case from the one here presented.

No effort will be made to cite a case which, on its facts, supports the conclusion here reached. Each case must stand on its own facts. Suffice it to say that the appellants in this case have failed to sustain their burden to show that the deed in question was the result of undue influence and the trial court's decree on this issue must be affirmed.

### Contested Claims

In September, 1968, the executor filed a semi-annual settlement, in which he took credit for numerous items of expenditure to which Norma Jean and Nancy filed objections. After Roger had employed new counsel, counsel advised that numerous items, apparently arising from farming operations which Roger continued to conduct, were not properly chargeable to the estate. An amended semi-annual settlement was filed in February, 1969, from which some $2,000 of expenditures had been deleted. The sisters again filed objections to the allowance of certain items. A hearing was held on the objections. Both the sisters and the executor appealed from the probate court's determination. The probate court held that the executor was entitled to take credit for the following payments:

| | |
|---|---|
| Mullin Bros. Hardware | $178.08 |
| Ray Hudson | $237.52 |
| Gas & Chemicals, Inc. | $103.59 |

The semi-annual settlement had sought credit for $154.54 paid Mullin on an allowed claim, and for $50, apparently paid by the executor under then § 473.403 2., RSMo 1959. The settlement claimed credit for $281.03 paid Hudson on an allowed claim, plus $37.00, again apparently paid by the executor under § 473.403 2. The $103.-59 item of Gas & Chemicals, Inc. was payment of an allowed claim in that amount.

On the appeal to the circuit court, the claimants appeared to testify to the basis of their claims and the trial court heard their testimony, subject to the objection of counsel for the sisters, based upon the Dead Man's Statute. The circuit court ultimately held that such objections should have been sustained and that there was no evidence to show that the estate was liable on the claims and ordered them disallowed.

A motion for new trial was filed on behalf of the executor, pointing out the allowance of the claims as above indicated and arguing that, since no appeal had been filed from such allowance within 30 days, such allowance had the effect of a final judgment.

The trial court sustained the executor's motion on this issue, stating:

"* * * [T]he Court erroneously placed the burden of proof on the Executor rather than on the Exceptors in the trial on Plaintiffs Exceptions to the Executors Settlement.

"Come now plaintiffs Exceptors by their said attorney, and in open Court, state to the Court that they have no evidence to present on the issue of whether or not the Estate is liable for claims to the allowances of which they are excepting."

■ ⁰ The trial court then entered judgment, allowing the executor to take credit for the amounts of the claims which had been allowed by the probate court.

The trial court's ruling on this issue was correct. Section 473.403, RSMo 1959, as it read at the time here relevant provided, in part:

"2. Except in case of the executor's or administrator's own claim, any claim of one hundred dollars or less may be paid by the executor or administrator, without filing or allowance thereof by the court, and credit may be had therefor in his settlement, but, if written exceptions thereto are duly filed by any interested party within the time allowed for filing exceptions to the final settlement of the executor or administrator, hearing by the court shall be had thereon. On such hearing the burden is on the executor or administrator to prove that the estate was liable on the claim for the amount so paid. If the court adjudges that the estate was not liable for any part of the amount paid, the exceptions to such extent shall be sustained."

■ ■ The provision of paragraph 2 placing a burden of proving the estate's liability applies only to a claim which has been paid by the executor, without allowance by the court. Insofar as the payment is of a claim that has been allowed by the court, the party making such payment is in effect questioning the effect of a judgment. Section 472.150 may in some circumstances permit the validity of a claim to be questioned after the time for appeal from its allowance has expired (see In re Estate of Bacheller, 437 S.W.2d 132 (Mo.App.1968), but in such proceeding, the complaining party would have the burden of proof.

### ASCS Payment

Count II of plaintiffs' petition sought judgment in favor of Nancy Bozarth for $523.77 as her share of a payment of $2,618.89 made to Roger under the ASCS program. The payment covered all land owned by Gertrude at the time of her death, including the 69 acres received by Nancy. Nancy claimed one fifth of the payment, inasmuch as the land received by her was approximately one fifth of the land owned by Gertrude.

In the circuit court, the agent in charge of the ASCS office testified. Appellants acknowledge that his testimony shed no light on the claim of Nancy. In fact, after he had testified at length, the parties agreed that the agent should submit a letter to the court which would show the amount of ASCS payment attributable to Nancy's 69 acres. This was done and the trial court, on the basis of that report, entered judgment in favor of Nancy for $235.63. At the time, Nancy's counsel pointed out that the semi-annual settlement to which the sisters had objected included an item showing a receipt and disbursement of $270.79, with the explanation:

"Nancy Bozarth—Commodity Credit Corp. payment received on 6/16/68, erroneously deposited to estate acct."

Counsel stated to the trial court that such payment had never been received and

that the figure computed by the ASCS office should be increased by $270.79. The trial court declined to do so and appellant Nancy now asserts that such failure was error.

■ Appellant Nancy had the burden of proving her claim for her share of the ASCS payment. The amount shown due under the evidence was $235.63. The fact that the settlement showed a different figure is not evidence that such different figure was the correct figure or that the amount shown in the settlement was owed in addition to the amount shown by the evidence. The judgment of the trial court on this issue was not erroneous.

### Tobacco Rental

The semi-annual settlement showed the receipt of $486 from Theodore Morgan as tobacco ground rental for 1968 per oral lease with decedent. Count I of plaintiffs' petition sought judgment in favor of Nancy and against Roger as executor for this amount, alleging that the tobacco land was a portion of the land devised to her and that she was entitled to the rent for 1968.

■ Morgan rented a small tract of tobacco land from Mrs. Turpin in 1966 at a rental of $300 per acre, with no specific agreement as to the payment of rent in advance and the custom of paying the rent at the end of the year, after the crop had been harvested and sold. The 1968 rent had been paid in 1969. The trial court held that because the rent was on a cash basis, the rent was due at the beginning of the term. This conclusion was erroneous. In the absence of agreement on the question, and none was shown here, rent accrues and becomes due at the end of the term. Ridgley v. Stillwell, 27 Mo. 128 (1858); Ostner v. Lynn, 57 Mo.App. 187 (1894); 49 Am.Jur.2d, Landlord and Tenant, § 555, p. 535 (1970). Therefore, Nancy was entitled to the 1968 rent, not the estate. Id., § 538, p. 517. The trial court's judgment on Count I was erroneous and should be reversed and remanded with directions to enter judgment on Count I in favor of plaintiff Nancy for the amount sued for.

### Rulings on Evidence

■■ Appellants contend that errors on the part of the trial court in ruling on their objections to admission of evidence require reversal. In an equity case, questions of admissibility of evidence would ordinarily not, in any event, require reversal of the decree. None of the objections related directly to the issue submitted to the jury. Nevertheless, the objections have been considered and are without merit. Appellants objected to any testimony by Roger as to matters prior to his appointment as executor on the grounds that he was disqualified under the Dead Man's Statute (§ 491.010, RSMo 1969) because he was a party to the action as executor. The trial court overruled such objection on the grounds that Roger was only a nominal party as executor, but did rule that he could not testify to the transaction with his mother. The trial court's ruling was not erroneous. Although Roger as executor was nominally a party to the citation to discover assets and to the action to set aside the deed, the relief in both instances was sought against Roger personally, not in his representative capacity. Therefore, the disqualification arising from the administration clause of the Dead Man's Statute was not applicable. 58 Am.Jur., Witnesses, § 286, p. 180 (1948).

■ Appellants assert that their objection to Gerald's testimony on the basis of the Dead Man's Statute should have been sustained. Gerald was not a party to the action nor did he testify on his own behalf. The trial court's ruling was not error.

■ Finally, appellants assert that the testimony of Morton to the preparation of the deed should have been excluded because the executor pendente lite invoked the attorney-client privilege. Morton was acting as attorney for both Roger and his mother. The conversations among them

were not protected by the attorney-client privilege. Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 585–586[7] (banc 1928).

The judgment and decree of the trial court is affirmed, except for Count I. On Count I, the judgment is reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against defendant for the amount sued for. Costs of this appeal shall be taxed three fourths against appellants and one fourth against respondent executor.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.