T. T. H. V., a minor, by T. T. M., her next friend, Plaintiff,

v.

L. C. A., Jr., Third-Party
Plaintiff-Respondent,

v.

T. T. M., Third-Party
Defendant-Appellant.

No. 28514.

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

Kendall R. Vickers, Ewing, Ewing, Carter, McBeth & Smith, Nevada, for third-party defendant-appellant.

No respondent's brief filed.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

TURNAGE, Presiding Judge.

This case originated with the filing of a petition for declaratory judgment by T.T.M. as mother and next friend of T.T.H.V. for a declaration that L.C.A. was not the father of T.T.H.V. L.C.A. filed a third party petition to name T.T.M. as a third party defendant.

The court found L.C.A. to be the father of T.T.H.V. and granted custody to the mother but ordered L.C.A. to pay $100 per month in support. T.T.M. appeals and alleges there is no substantial evidence to support the judgment, error in the admission of evidence and error in the refusal to grant a continuance. Affirmed.

T.T.M. testified she lived in Viet Nam and became acquainted with L.C.A. at an officers' club when he was in Viet Nam as a civilian employee of the United States. She testified she had a Vietnamese husband with whom she lived and stated unequivocally the child in question was the offspring of that marriage. She steadfastly denied any sexual relationship with L.C.A. except for one occasion when the child was fourteen months old. She conceded L.C.A. did pay the expenses for her, the child, her mother and sister, to leave Viet Nam and come to the United States.

The mother of T.T.M. testified by deposition and generally corroborated the testimony of her daughter except for the fact she could not remember the name of her daughter's husband.

L.C.A. testified he met T.T.M. when she was working in the officers' club and shortly thereafter began living with her. He related T.T.M. had been married, but her husband had been killed prior to his meeting her. He stated they went through a marriage ceremony in Viet Nam, although the marriage was not recorded with the American Embassy. He stated they were living together in a house in Saigon during the time of conception of the child. L.C.A. stated unequivocally he was the father of the child. L.C.A. returned to the United States and thereafter received letters from T.T.M. reporting the child to be ill and pleading for him to remove her and her family from Viet Nam to preserve their safety. He stated he flew back to Viet Nam and paid the expenses for T.T.M., her mother and sister, and the child to fly to the United States.

The group settled in Nevada, Missouri, but very shortly after arrival difficulty arose between L.C.A. and T.T.M. It was after this breach in the relationship this lawsuit was filed.

A medical technician testified as to a study of blood samples taken from L.C.A., T.T.M., and the child. He stated he could not positively state that L.C.A. was the father, but he could state the blood test did not exclude L.C.A. as the father.

A guardian ad litem was appointed for the child and he participated in the trial along with counsel for T.T.M. and L.C.A.

▮ T.T.M. first contends there was no substantial evidence upon which the court could find L.C.A. to be the father of the child. The factual recital just completed shows substantial evidence upon which the court could base its judgment. The irreconcilable conflict in the evidence between T.T.M. and L.C.A. was resolved by the trial court. This of necessity shows the court believed L.C.A. In such a situation this court will defer to the finding of the trial court based as it is on the credibility of the witnesses and the weight to be given their testimony. *D. I. M. v. P. D. M.*, 548 S.W.2d 237, 239 (Mo.App.1977).

The trial court having resolved the conflict in the evidence and there being substantial evidence to support the judgment, the same must be affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

T.T.M. next complains of the refusal to grant her a continuance. On the day of trial, T.T.M.'s counsel advised the court he had arranged for an interpreter to be present at the trial to interpret the proceedings for T.T.M., but the interpreter was snowbound in Kansas City. He requested a continuance on this ground. The court stated he understood T.T.M. could speak English and stated he would proceed and see how they got along and if there was any difficulty he would consider further the necessity of an interpreter. The testimony of T.T.M. proceeded without objection, and, so far as the record reveals, without difficulty. Although T.T.M. reflected in her answers some incorrect usage of the English language, she appeared to understand the questions and her answers were completely intelligible.

▮ T.T.M. claims her credibility was damaged by the absence of an interpreter because she first denied having slept with L.C.A., but later was recalled to the stand and admitted this fact. She argues her denial arose from a misunderstanding of the question and an interpreter could have stated the question so that she could have answered correctly the first time.

On direct examination T.T.M. was asked by her counsel on at least two occasions if she had ever slept with L.C.A. On both occasions she did not demonstrate any lack of understanding of the question and gave an emphatic denial. When she was recalled she was asked substantially the same question and admitted she had done so one time when the child was fourteen months old. The record does not support the argument now made that the difference in her answers was because of her lack of understanding of the English language. The record simply indicates substantially the same question with different answers.

The use of an interpreter rests within the discretion of the court. *Kley v. Abell*, 483 S.W.2d 625, 627[2, 3] (Mo.App.1972). No abuse of that discretion is shown here.

▮ The second ground for continuance was to allow time to obtain the testimony of two witnesses who were located in California about sixty days prior to the date of trial. The motion on this ground failed to show the exercise of due diligence to obtain the testimony of those witnesses in the interval between the time counsel stated the witnesses were located and the date of trial. Further, the motion showed the evidence which these witnesses would give would be cumulative to the evidence presented to the court. Under the circumstances shown here, the court did not abuse its discretion in denying the continuance. *Kelch v. Kelch*, 462 S.W.2d 161, 164 (Mo.App.1970).

▮ The last contention concerns the admission of the testimony of the medical technologist. T.T.M. claims this testimony was inadmissible because it concerns only statistical data and because this evidence admittedly could not prove paternity. "But even though evidence is admitted improperly, when other competent evidence supports a judgment in a court-tried case, such as this, or an equity case, harmless error results. *Bashor v. Turpin*, 506 S.W.2d 412, 421[8] (Mo.1974); *Nordquist v. Nordquist*, 321 Mo. 1244, 14 S.W.2d 583, 588[4] (1929)."

*Pelligreen v. Century Furniture & Appliance Co.,* 524 S.W.2d 168, 170[1–7] (Mo.App. 1975). Such rule applies here. T.T.M. has not demonstrated an absence of sufficient competent evidence to support the court's decree without considering the blood test results. Assuming arguendo evidence of the blood test was inadmissible, such error is harmless.

The judgment is affirmed.

All concur.