Wayne **RUSSELL,** Appellant,

v.

**ESTATE OF** Norman A. **CHAPMAN,**
**Deceased, Respondent.**

No. 16403.

Missouri Court of Appeals,
Southern District,
Division One.

May 7, 1990.

Sidney T. Pearson III, Pearson & Carter, St. James, for appellant.

Roger Andrew Carnahan, Carnahan, Carnahan & Hickle, Rolla, for respondent.

CROW, Presiding Judge.

Wayne Russell ("claimant") filed two claims against the Estate of Norman A. Chapman, Deceased. One claim alleged that claimant and Chapman ("decedent") were partners and that certain personal property inventoried in decedent's estate was partnership property. The other claim averred decedent owed claimant $2,970 by reason of an "oral contract" between them apart from the partnership. Claimant also filed a petition for dissolution of the partnership seeking, among other relief, a decree listing all partnership assets.

All of the personal property in dispute was sold at auction by the estate during the pendency of claimant's actions in the trial court.

Claimant's actions were ultimately consolidated and tried simultaneously. The trial court, in a judgment accompanied by meticulous findings of fact and conclusions of law, denied both claims, found that claimant was in possession of the partnership bank account having a balance of $4,259.12, and ruled that claimant was due nothing from the estate.

Claimant appeals, briefing two assignments of error. They will be discussed after a recital of the pertinent evidence.

The partnership was formed in April, 1986, under the name "Custom Boat Crafts" to engage in manufacturing "[j]et boats for the river." There was no written partnership agreement. The partnership bank account was maintained at Phelps County Bank, whose records showed the following deposits:

| July 14, 1986 (account opened) | $ 100 |
| July 28, 1986 [1] | 1,000 |
| August 11, 1986 | 2,000 |
| August 13, 1986 | 170 |
| August 21, 1986 | 500 |
| August 22, 1986 | 25,000 |

Claimant testified that the initial deposit ($100) came "[o]ut of my pocket." Claimant also avowed that the $1,000 deposit and the $2,000 deposit were cash supplied by

him. Claimant remembered nothing about the $170 deposit. As to the $500 deposit, claimant testified: "I might have deposited it. To remember why I deposited it right now I can't tell you."

According to claimant, half of the $25,000 deposit came from him. He recited the following tale. He and decedent were preparing to order "motors and pumps and stuff" to install in four boats that were under production. Claimant and decedent went to Phelps County Bank, claimant carrying $12,500 cash. Claimant undertook to obtain a cashier's check payable to Indmar Products (the supplier) in the amount of $12,236.82. The cashier informed claimant he "would have to fill out a report for the federal government." Decedent objected, stating "it wasn't none of their business." Decedent warned claimant that if he bought the cashier's check "the deal was off" and they would no longer be partners. Decedent said to let him handle it, that he would "take care of it and there wouldn't be no papers filled out." Claimant gave decedent the $12,500 cash; the equipment was subsequently delivered by Indmar.

Decedent died February 7, 1987. Ceola A. Chapman, personal representative of decedent's estate, testified she was with decedent on August 21, 1986, when the $500 bank deposit was made. According to Ceola, decedent made the deposit with $500 cash.

Ceola was shown the deposit slip for the $25,000 deposit; the slip bore the notation "LOC Adv." Ceola explained the notation indicated a "loan advance" of $25,000. She added that Phelps County Bank had filed a claim against the estate for the loan shown on the deposit slip and that the estate had paid the claim.

The parties stipulated that if the loan officer who prepared the slip were called as a witness, he would testify that the notation "LOC Adv" stood for "line of credit advance for $25,000 and that [decedent]

---

**1.** A summary of the bank account activity received in evidence by stipulation shows the date of this deposit as July 16, 1986; however, the bank records, while not completely legible, appear to show the date as July 28, 1986. In any event the date is not crucial, there being only one deposit of $1,000 during the account's existence.

did, in fact, borrow $25,000 from Phelps County Bank." It was further stipulated that the $25,000 was deposited into the Custom Boat Crafts account.

Claimant testified that in addition to the deposits he made to the partnership bank account he purchased parts for the boats from time to time with his own funds. These purchases, said claimant, totaled roughly $2,500.

Ceola Chapman identified Exhibit C as a collection of invoices and checks which, according to her, showed purchases of boats, trailers, equipment and parts for the partnership paid for by decedent. The total of those purchases is $35,891.83. Ceola explained that during the time those purchases were made—July 5, 1986 to November 23, 1986—decedent had no other enterprises under way that would have used such items, and that all of them were used in the partnership.

The trial court's findings of fact included these:

"11. The partnership maintained a bank account at Phelps County Bank.... This bank account was not included in the estate inventory....

12. The evidence shows that the cash deposit on August 21, 1986 was made by decedent Norman Chapman as testified to by Ceola Chapman. The evidence shows that the $25,000.00 deposit on April [sic] 22, 1986 was made by decedent Norman Chapman through an advance on his personal line of credit and was from his personal Chapman Construction Company account. Neither the estate nor Claimant Wayne Russell had records to show the source of the remaining deposits although Claimant Wayne Russell testified that he made each of the remaining deposits.

13. In addition to the contributions to the partnership shown by the deposits in the partnership bank account, the personal representative produced cancelled checks on decedent Norman Chapman's personal account and paid invoices in the name of Norman Chapman for advances and/or loans to the partnership for the purchase of the above-described assets and materials totaling Thirty Five Thousand Eight Hundred Ninety One Dollars and Eight [sic] Three Cents ($35,891.83).

14. Claimant Wayne Russell produced no checks, receipts, invoices, documents or other records of any kind showing contributions or advancements to the partnership."

In addition to the above findings the trial court found that the items inventoried in decedent's estate which were alleged by claimant to be partnership property were appraised, in the aggregate, at $25,350, and that when they were sold at auction they brought, in the aggregate, approximately $27,415. Claimant does not challenge the findings in this paragraph.

The trial court's conclusions of law included this:

"The evidence shows that decedent Norman Chapman contributed Five Hundred Dollars ($500.00) to the partnership by a cash deposit in the partnership bank account on August 21, 1986, and that decedent Norman Chapman contributed an additional Twenty Five Thousand Dollars ($25,000.00) to the partnership on August 22, 1986, this deposit being the proceeds from a loan received from Phelps County Bank. This debt was paid by the estate after decedent's death. Receiving Claimant Wayne Russell's testimony in the most favorable light, it shows cash deposits of One Hundred Dollars ($100.00) to open the account, One Thousand Dollars ($1,000.00) on July 16, 1986, Two Thousand Dollars ($2,000.00) on August 11, 1986 and One Hundred Seventy Dollars ($170.00) on August 13, 1986 for a total of contributions by Wayne Russell of Three Thousand Two Hundred Seventy Dollars ($3,270.00)."

The trial court, citing § 358.180, RSMo 1986, ruled that if the $35,891.83 paid by decedent for the items shown by Exhibit C be considered a loan to the partnership, then the entire sale proceeds of $27,415 are due the estate to be applied toward the partnership's debt to decedent in the amount of $35,891.83. Accordingly, claimant would take nothing on his claim and the

estate should be awarded judgment against claimant for the balance of the partnership bank account in claimant's possession ($4,259.12) and for his proportionate share of the remaining amount of the debt.

Alternatively, the trial court ruled that if the $35,891.83 payment be considered a capital contribution by decedent to the partnership, then decedent would have contributed that sum plus $25,500 (the $500 and $25,000 bank deposits) for a total capital contribution of $61,391.83, being 95 percent of the total capital contribution to the partnership. This, said the trial court, compares with claimant's capital contribution of $3,270, being 5 percent of the total capital contribution.

The trial court held that partners are to be repaid for their capital contributions in the same proportion as they contributed to the partnership. The partnership assets consist of the sale proceeds of $27,415 and the $4,259.12 in the partnership bank account, making a total of $31,674.12. Ninety-five percent of the partnership assets is $30,090.42; that amount would be due the estate. Five percent of the partnership assets is $1,583.70; that amount would be due claimant. The latter amount, said the trial court, is subject to an offset for the $4,259.12 partnership bank account held by claimant, leaving $2,675.42 due the estate from claimant.

Therefore, declared the trial court, regardless of whether the $35,891.83 paid by decedent for the items shown by Exhibit C is treated as a contribution to capital or a loan to the partnership, claimant's demand against the estate for the alleged partnership property should be denied.

The trial court also denied claimant's demand for $2,970 mentioned in the first paragraph of this opinion. Inasmuch as claimant assigns no error regarding the denial of that claim we give it no further attention.

■ Claimant's first point relied on reads:

"The trial court erred in making a conclusion of law that 'receiving Claimant Wayne Russell's testimony in the most favorable light, it shows … a total of contributions by Wayne Russell of Three Thousand Two Hundred Seventy Dollars' in that such a conclusion is not supported by substantial evidence because Wayne Russell testified clearly that he had contributed nineteen thousand dollars of capital to the partnership."

The $19,000 capital contribution, according to claimant, consists of (a) the $12,500 cash claimant allegedly gave decedent when decedent objected to purchasing the cashier's check, (b) the deposits of $100, $1,000, $2,000, $170 and $500 to the partnership bank account, and (c) the purchases claimant testified he made for the partnership totaling roughly $2,500.

Claimant argues that if the trial court indeed accepted claimant's testimony in the most favorable light, the trial court would have found that claimant's capital contribution totaled $18,770—the sum of items "(a)," "(b)" and "(c)" in the preceding paragraph. Claimant maintains that the trial court's conclusion that claimant contributed only $3,270 to the partnership contradicts the trial court's statement that it received claimant's testimony in the most favorable light, as the trial court could not have concluded claimant contributed only $3,270 while at the same time considering his testimony in the most favorable light.

Claimant misreads the trial court's conclusions. The trial court clearly determined that the evidence showed decedent made the $500 deposit to the partnership bank account on August 21, 1986, in cash. That conclusion, as noted by the trial court in its finding of fact number 12, is supported by Ceola's testimony. The trial court also clearly determined that the evidence showed decedent made the $25,000 deposit to the partnership bank account on August 22, 1986, using proceeds of a loan in that amount from Phelps County Bank. That conclusion is amply supported by Ceola's testimony, by the deposit slip that bore the notation "LOC Adv," and by the stipulated testimony of the loan officer that the notation showed a $25,000 line of credit advance to decedent by the bank, which

sum was deposited in the partnership bank account.

It is manifest that with respect to the $500 deposit and the $25,000 deposit, the trial court believed the evidence mentioned in the preceding paragraph and disbelieved claimant's testimony. That was the trial court's prerogative. In this judge-tried case the credibility of witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988); *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483[4] (Mo. banc 1980).

As we comprehend the trial court's conclusions, that court viewed claimant's testimony in the most favorable light in regard to only the $100, $1,000, $2,000 and $170 bank deposits. They total $3,270, the sum the trial court concluded claimant had contributed to the partnership. The trial court obviously disbelieved claimant's testimony that he gave decedent $12,500 cash and that he (claimant) purchased parts for the boats totaling roughly $2,500.

Claimant had the burden of proving his claim against the estate arising out of the partnership. *Bashor v. Turpin*, 506 S.W.2d 412, 421[6] (Mo.1974). That burden carried with it the risk of nonpersuasion. *Day v. Niebur*, 534 S.W.2d 843, 844[1] (Mo. App.1976). The trial court was not compelled to believe claimant contributed $18,770 to the partnership; the choice between the conflicting evidence on that issue was for the trial court. *Pender v. Hall*, 781 S.W.2d 583, 584 (Mo.App.1989); *Lovan v. City of Festus*, 679 S.W.2d 931, 932[4] (Mo. App.1984). We do not substitute our judgment for that of the trial court on credibility issues. *Strauss v. Strauss*, 755 S.W.2d 742, 743[1] (Mo.App.1988); *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65[5] (Mo.App.1987). Claimant's first point is patently without merit.

■ His second point, as we fathom it, contends the trial court erred in finding that decedent made loans or advancements to the partnership totaling $35,891.83, the amount shown by Exhibit C.

Claimant directs us to the cross-examination of Ceola where she conceded she did not know "what each and every one of those items on those invoices was used for and where it went." Claimant also refers us to segments of Ceola's cross-examination where she was told only the parts number for certain items and was unable to name the items. Claimant correctly asserts that in order for decedent's purchases of such items to be considered as advancements to the partnership there had to be some evidence showing that the items were in fact contributed to the partnership. Claimant insists there was no such evidence.

We disagree. The estate correctly points out that most of the invoices are to Custom Boat Crafts. Additionally, claimant admitted in his testimony that decedent bought boats, trailers, jet pumps, outboard motors and other items for the partnership. Furthermore, Ceola testified that during the time the items shown by Exhibit C were purchased (July 5, 1986 to November 23, 1986) decedent had no other enterprises under way that would have used such items and that all of them were used in the partnership boat operation.

The scope of our review is established by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

We hold the evidence was sufficient to support the trial court's finding that decedent purchased the items shown by Exhibit C and that such items were used in the Custom Boat Crafts partnership. Claimant's second point is denied.

Judgment affirmed.

PREWITT and PARRISH, JJ., concur.