Francis L. KENNEY, Jr., Appellant,

v.

LERITZ & REINERT, P.C.,
et al., Defendants,

Weier, Sherby, Hockensmith & Schoene,
Movants–Respondents.

No. 58099.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 13, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 8, 1991.

Application to Transfer Denied
July 23, 1991.

Francis Eugene Pennington, II, James R. Dankenbring, Christina L. Mell, St. Louis, for appellant.

Dallas W. Cox, Jr., St. Louis, for movants-respondents.

GARY M. GAERTNER, Presiding Judge.

Appellant, Francis L. Kenney, Jr., appeals from an award of attorney's fees against him in an action by respondents, Weier, Sherby, Hockensmith & Schoene, to foreclose their attorneys' lien. We affirm.

Appellant is a retired partner from the law firm of Leritz & Reinert, P.C. Upon retirement in 1979, appellant began receiving $1,226.86 per month in pension benefits pursuant to an annuity issued by General American Life Insurance Company (General American). The value of the annuity was calculated, at that time, to be $141,172.48.

Shortly thereafter, appellant's former law firm directed General American to recalculate the value of the annuity. This recalculation decreased the value to approximately $123,384.76 and General American began sending appellant monthly benefit checks in the amount of $1,072.26. Appellant had received three monthly benefit checks for the larger amount but refused to accept or cash any of the recalculated monthly checks. The smaller checks had printed on them the following language:

PLEASE ENDORSE EXACTLY AS DRAWN. ONLY THE PERSONAL ENDORSEMENT OF THE PAYEE WILL BE ACCEPTED. RECEIVED PAYMENT IN FULL SPECIFIED ON THE REVERSE SIDE.

On November 13, 1979, appellant filed a petition against his former law firm and General American. The petition, prepared by appellant's son, contained seven counts. Counts I and II were actions founded upon a note and Count III was an action for an accounting dealing with appellant's retirement from the firm. Count IV was an interference action which was dismissed in June of 1980. Count V of the petition sought to re-credit appellant's pension fund with $17,787.72, the amount lost after General American's recalculation. Count VI, which was filed in 1982, was an action for conversion which averred that General American had wrongfully placed the above-quoted satisfaction language on appellant's benefit checks which caused him to be unable to cash the checks without possibly losing his claim to the larger benefit calculation. Count VII was a claim under ERISA for the pension benefits. Appellant also sought punitive damages against General American for their actions regarding the fund.

In January of 1983, appellant employed the respondents to represent him. From January of 1983 through September of 1985, appellant paid respondents some $21,000.00 in legal fees. Appellant continued to refuse to accept the monthly benefit checks from General American.

On September 17, 1985, General American paid into the registry of the court the sum of $76,768.38, which represented the accumulation of the smaller benefit checks it had issued to appellant since 1979, but which were never accepted by appellant. The court minutes recognized that this sum represented the accumulated monthly benefits and further provided that additional monthly payments could be deposited and held with the registry pending further order of the court.

This further order occurred on November 18, 1985, when the court dismissed General American from the suit and ordered that the amount in the registry could be released to appellant without appellant waiving any claims against General American. Appellant obtained from the registry a check for the full amount on November 18, 1985, but, on December 27, 1985, he directed respondents to place the funds back into the court's registry, where they remain to this day.

Appellant, after paying respondents $21,000.00 in attorney's fees ceased paying his attorney's fees in October of 1985. In January of 1986, respondents withdrew as appellant's counsel and filed a notice of attorney's lien on the registry funds. In March of 1986, respondents filed a motion to foreclose its lien and collect from the fund $35,291.58 plus interest.

The motion to foreclose was heard by the court on December 11 and 12, 1989. On January 29, 1990, the court issued detailed findings of fact and conclusions of law, determining that respondents were entitled

to attorney's fees in the amount of $35,-199.50 plus $12,671.81 interest. The court entered judgment for this amount against appellant and ordered that this judgment be executed against the registry funds. This appeal followed.

■ Appellant first alleges that the funds which were placed in the registry were merely accumulated pension benefits which General American never disputed owing to appellant. As such, appellant argues, they are not available to be attached with an attorney's lien.

The applicable statute is RSMo § 484.130 (1986). This statute provides:

The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

■ Attorney's liens under this statute may be imposed upon judgments, verdicts or settlements in which "through the efforts of the attorney ... property or a fund was produced." *Munday v. Thielecke*, 290 S.W.2d 88, 93 (Mo.1956). Appellant first argues that the only dispute in this matter concerned the $17,787.72 by which General American reduced the appellant's pension. Thus, the accumulated pension was merely an obligation already existing and not in dispute.

However, the testimony at the hearing indicated that appellant's petition sought the value of the entire pension and sought punitive damages. The testimony at the hearing also clearly indicated that one of appellant's major objectives was his receipt of the funds without any possible waiver of claims. This was clearly accomplished on November 18, 1985, and, since this time, appellant has had the ability to access these funds without any possibility that such action may constitute his waiver of other claims. The simple fact was that appellant employed respondents to represent him in his attempt to obtain the benefit of his pension. This benefit included the accumulated benefits as well as the $17,787.72 worth of recalculated benefits.

Appellant also argues that, even if the registry funds were available, there was no evidence that respondent's work helped produce the fund. While it is true that respondents admitted that the deposit of the funds was a unilateral action on the part of General American, this unilateral action took place some five years after they were first asked to tender benefits without the quoted condition. Respondents testified that their efforts were directed not only toward the return of the $17,787.72, but also focused on the appellant obtaining his entire pension benefit, as appellant pled in Counts VI and VII.

Moreover, respondents produced billing statements to the court detailing its work on appellant's case. While the total legal bill in this case, over $55,000.00, is a staggering testimonial to the high cost of litigation, there is no argument on appeal that the trial court's finding that these charges were reasonable was error.

Appellant next claims that the court order ran afoul of the oft stated standards of *Murphy v. Carron:* The judgment in a court tried case need be reversed only if there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Appellant attacks many of the court's specific findings as being factually and/or legally erroneous. Specifically, appellant argues that the court improperly characterized General American's deposit of the registry funds in September of 1985 as conditional and in stating that the funds deposited would not be accepted by appellant without language by General American stating that appellant did not waive his claims by accepting them. Appellant also attacks the

court's conclusion that on November 18, 1985, the funds became unconditionally his.

▮ While it may be true that General American's deposit on September 15, 1985, did not include any reference to waiver, the impact this had on the conditional or unconditional nature of the funds is irrelevant in this case. The only truly pertinent question is whether the appellant retained the services of respondent, in part, to collect the deposited funds. As noted above, one of appellant's major objectives was receipt of the funds without any possible waiver of claims. He hired respondents to help him achieve this objective and, on November 18, 1985, the court placed the requested language on the registry funds. This is sufficient to allow an attorney's lien to attach.

If the funds were indeed available to appellant on September 15, then the attorney's lien attached to them that much earlier. Clearly, as the court pointed out, the November 18, 1985, court order made the funds unconditionally appellant's and via RSMo § 484.130, available for attorney's liens.

Appellant also claims that the court's finding that General American "finally agreed to the non-waiver of claims provision" on November 18, 1985, was erroneous because General American had previously orally and in writing assured appellant that they would not assert waiver against him if he withdrew the funds. However, the only indication in the record of General American placing language of this non-waiver upon the checks or upon the fund itself was November 18, 1985. The court's order was obviously referring to the tender of funds or to the language placed upon the registry funds itself. The court's finding was, indeed, supported by the evidence.

▮ Lastly, appellant asserts that the remedy afforded, a judgment and execution, was improper since the court did not explicitly state that respondent was entitled to an attorney's lien. Appellant argues, then, that the court's grant of legal relief, a judgment for attorney's fees, was improper without the court's acknowledgement that equity jurisdiction attached.

Appellant's argument is based on the old rule that, once a court of equity has possession of the case, it may proceed to render complete relief, even if such relief comes in the form of a legal remedy. *Craig v. Jo B. Gardner,* 586 S.W.2d 316, 325 (Mo. banc 1979). As we interpret appellant's argument, he appears to be suggesting that the respondent did not establish his right to an attorney's lien under the statute. Appellant attempts to back up this argument by claiming it is shown by the evidence and suggested by the trial court's refusal to recite appellant's right to a lien in its judgment. Thus, the appellant claims the court was without jurisdiction to enter a judgment.

However, we have already addressed the question as to whether respondent established his right to a lien. Further, the court found that the registry funds constituted a partial payment of the damages which appellant sought in his multi-count petition. There would have been absolutely no need for this express finding had this not been an action for a statutory attorney's lien. In short, the court's order clearly responded to the claims made by the parties and covered all of the elements necessary for the propriety of a lien in great detail.

▮ As the *Craig* case teaches, a court in an equity action has the ability to grant legal relief so long as such relief is within the pleadings. *Id.* Respondent's pleadings asked that the lien be foreclosed and asked that the court release to them the amount in the registry equal to their fee and for further relief in law or equity that the court deemed proper.

The court's relief was within the pleadings. Although the attorney's lien statute does not provide a remedy to enforce the lien it creates, Missouri courts have held that such a remedy is left to the court; even to the extent that the court may determine whether the particular method selected by the attorney is appropriate. *Plaza Shoe Store, Inc. v. Hermel, Inc.,* 636 S.W.2d 53, 56 (Mo. banc 1982). In our case, the court possessed the funds which were the subject of the lien. The court's order

granting a judgment and execution upon those funds was an appropriate remedy to enforce the attorney's lien. The action fulfilled the purpose of the statute, which is to "provide protection in fact for the attorney who has rendered services to a client." *Satterfield v. Southern Railway Co.*, 287 S.W.2d 395, 398 (St.L.Ct.App.1956).

The judgment of the court is affirmed.

CRANDALL, C.J., and SIMON, J., concur.