KANSAS CITY AREA TRANSPORTATION AUTHORITY, Plaintiff,

v.

4550 MAIN ASSOCIATES, et al., Appellants,

Beckett, Lolli, Bartunek & Beckett, Respondent.

No. WD 48942.

Missouri Court of Appeals, Western District.

Feb. 28, 1995.

862

Russell S. Jones, Thomas A. Sheehan, Shughart, Thomson & Kilroy, P.C., Kansas City, for appellants.

Don R. Lolli, Eric C. Sexton, Beckett, Lolli, Bartuneck & Beckett, Kansas City, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

ELLIS, Judge.

This is an appeal by Frank S. Jennings and 4550 Main Associates, a partnership, (appellants) from an Order entered by the Circuit Court of Jackson County awarding an attorney's lien and general judgment against them in favor of Beckett, Lolli, Bartunek & Beckett, a Kansas City, Missouri law firm. The general judgment and lien was for $150,-128.71.

Frank S. Jennings (Jennings) is an original partner in 4550 Main Associates (4550), a partnership formed in 1979. Jennings and 4550 together owned real estate on which two Tudor-style commercial buildings were situated, located east of the Country Club Plaza and adjacent to the Country Club Right-of-Way, between 45th and 47th Streets on Main Street, in Kansas City. The buildings are commonly known as 4528–4550 Main Street (4550 Main property). Beckett, Lolli, Bartunek & Beckett (BLBB) is a Kansas City, Missouri law firm, and Theodore C. Beckett (Beckett) is the firm's senior partner.

On February 23, 1990, the Kansas City Area Transportation Authority (KCATA) and the City of Kansas City, Missouri (City) filed suit in Jackson County Circuit Court against Jennings, 4550 and others, seeking injunctive relief, a declaratory judgment quiet title and

trespass damages. The suit related to what is known as the Country Club Right-of-Way. The Country Club Right-of-Way is a 100 foot wide former railroad right-of-way, and the suit pertained to that portion of the right-of-way adjacent to the 4550 Main property.

Jennings and 4550 were not served until the fall of 1990. After service, Jennings talked about the suit with Keith Wilson Jr., a Kansas City lawyer whom he had known for many years and who represented him from time to time over the years. Wilson suggested that Jennings and 4550 hire Beckett to represent them in the action because Beckett was already handling another case involving the right-of-way north and south of the subject property and would therefore be familiar with the issues. At Jennings' request, Wilson took the petition to Beckett and hired him to represent Jennings and 4550 in the proceedings.

On November 29, 1990, BLBB entered its appearance in the case by filing a motion to dismiss and a motion for partial summary judgment. The parties engaged in extensive briefing of the issues and ultimately, on January 2, 1992, the motions were denied. BLBB then filed an answer and counterclaim on behalf of Jennings and 4550. Beckett communicated with Jennings, personally and on behalf of 4550, for the most part through Keith Wilson Jr. Jennings lived in Mexico and was in Kansas City infrequently. At the time Wilson took the petition to Beckett, no express agreement regarding attorney's fees was made. However, on June 19, 1991, Jennings and Wilson came to Beckett's office for the purpose of discussing the case and for Jennings to review and sign interrogatory answers. Attorney's fees were also discussed at that time. Beckett told Jennings that he was charging him at an hourly rate of $150 for his time, and lesser amounts for other lawyers in the firm. There was also discussion of a possible contingent fee agreement rather than hourly rate billing.

Jennings and Beckett met again at Beckett's office on July 22, 1992. At this point, the motions to dismiss and for partial sum-

mary judgment had been denied, and the answer and counterclaim had been filed. This meeting was also held so that Jennings could review further interrogatory answers, and sign them. Fees were also discussed and in the interrogatory answers signed by Jennings that day, one answer reflected that Jennings owed BLBB $56,000 in fees at the end of June, 1992. Beckett presented Jennings with a contingent fee contract, explained it to him, and further advised that if Jennings accepted the agreement, he did not owe Beckett any money unless money was recovered on Jennings' behalf. Jennings indicated he was in a hurry and would take the contract home, read and sign it, and would send it back the next day. Jennings never signed the agreement. Therefore, on August 4, 1992, Beckett informed Jennings by letter that he was withdrawing his offer to operate under the contingent fee agreement and expected to be paid on an hourly rate basis.

During the July 22nd meeting, Beckett also discussed settlement possibilities with Jennings. He advised him that he had received an offer of $40,000 from KCATA. Jennings rejected the offer. Beckett suggested a counter-demand of $2,000,000. This amount was consistent with the $2 million to $3 million amount of damages Jennings indicated he was seeking in his answer to interrogatories signed by him that day. It was based upon BLBB's work, and investigation of another pending case which involved an appraisal of property adjoining Jennings' land to the north. Before Beckett discussed the damage valuation information with Jennings, Jennings told Beckett he had an offer from Twentieth Century Realty, Inc. for the entire 4550 property in the range of $500,000. Beckett advised Jennings he thought the figure was quite low and, based on the work he and his firm had done, he believed the entire property's value might be as high as $5,000,000. He provided Jennings with a legal memorandum, prepared by an associate in the firm with an extensive civil engineering background, which plotted the square footage, and a copy of the commissioners' report in the case pending on the property to the

north of 4550 Main. Beckett also discussed with Jennings, and provided him copies of, other valuation documents.

Unknown to Beckett until the July 22nd meeting, Jennings had received an offer from Twentieth Century in May, 1992. Jennings retained attorney John Gibson to assist him in dealing with Twentieth Century, and entered into negotiations for sale of the entire 4550 Main property. The initial offer had been for the north building and lot only. The offer was $750,000. However, on July 10, 1992, Twentieth Century revised its offer to include the entire property at a purchase price of $2,450,000, and communicated the offer to Jennings by letter that day. Negotiations continued and culminated on September 4, 1992, when Jennings and 4550 entered into an agreement with Twentieth Century to sell the entire 4550 Main property (the two buildings and lots, and the west 50 feet of the Country Club Right-of-Way), and to sell and assign their interest in the KCATA lawsuit. The total sale price was $2,500,000.

On July 27, 1992, Beckett wrote Twentieth Century, advised them of his representation of Jennings and 4550 in the KCATA lawsuit, informed them that he had become aware of their negotiations to purchase the 4550 Main property, and asserted an attorney's lien [1] on any sale proceeds relating to the right-of-way. The September 4, 1992 contract to sell the property contained a provision which acknowledged the lien claim, provided that the parties would investigate the matter and attempt to resolve it. As a result, on September 29, 1992, the contract was amended to provide that Twentieth Century would indemnify and hold Jennings harmless with respect to BLBB's fees. In return, the purchase price was reduced to $2,452,500.

Jennings was deceptive with Beckett about his negotiations with Twentieth Century,

even to the extent of denying a contract of sale on September 18, 1992. Nevertheless, Beckett learned of the contract, which Jennings, through new counsel, finally acknowledged, and after considerable correspondence back and forth between Beckett and new counsel, Beckett was advised by letter on October 16, 1992 that the sale had been completed, that Twentieth Century had acquired Jennings' interest in the KCATA lawsuit, that Twentieth Century was in the process of resolving it to their satisfaction, and "therefore there is no further need for any representation of Mr. Jennings or 4550 Main Associates." Just prior to this letter, Beckett had sent Jennings' new counsel a statement for services reflecting $111,075 in attorneys fees, and cash advances and expert witness fees of $6,790.31, for a total due of $117,865.31.

On October 26, 1992, Beckett filed a notice of attorney's lien in the KCATA action, claiming a lien in the amount of $127,365.31 "against the proceeds received and to be received from the settlement/sale of this lawsuit." He likewise filed a motion to enforce the lien. Thereafter, the law firm of Polsinelli, White, Vardeman & Shelton P.C. entered its appearance on behalf of Twentieth Century, and Jennings new counsel, Russell S. Jones, Jr. and Shughart, Thomson & Kilroy, P.C. entered their appearance for Jennings and 4550. On November 24, 1992, Beckett received a letter from Jones, on behalf of Jennings and 4550, advising Beckett that "if there ever has been an attorney/client relationship between your law firm and Mr. Jennings or 4550, you should consider that attorney/client relationship to be at an end." As a result, Beckett sent Jones a statement for services reflecting attorney fees of $123,235.00 and cash advances and expert witness fees of $16,647.41, for a total of $139,882.41.

1. Section 484.130, RSMo 1986 provides:

The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

The trial court subsequently scheduled a hearing on BLBB's motion to enforce attorney's lien, and all parties received notice. Jennings objected to the hearing, arguing that the court lacked jurisdiction to hear the matter as a part of the underlying action, and, even if it could be done in that manner, it could not be heard until a judgment had been entered or the underlying lawsuit had been settled and finally resolved. The court overruled the objections and heard evidence on the motion over the course of several days between June 4, 1993 and September 16, 1993 and ultimately, on October 13, 1993, entered findings of facts and conclusions of law awarding BLBB fees "based on the *quantum meruit* reasonable value of services performed prior to November 24, 1992, in the amount of $123,235.00, plus out-of-pocket expenses of $1,005.35 plus expert witness fees of $15,642.06." The court also allowed interest on that amount, resulting in a total award of $150,128.71, granted an attorney's lien in that amount "against the $2,452,500.00 proceeds received and/or to be received by Jennings and 4550 from Twentieth Century, . . ." and granted a general judgment against Jennings and 4550 for that amount as well.

Prior to conclusion of the evidence on BLBB's motion, KCATA and Twentieth Century agreed to settlement of the underlying lawsuit, and testimony about the details of the settlement was presented. Under the agreement, KCATA was to pay Twentieth Century $50,000. In addition, there was a license agreement allowing Twentieth Century ingress and egress along the 100 foot Country Club Right-of-Way so that it could reach its buildings. Also, Twentieth Century agreed to convey its right, title and interest in the west 70 feet of the right-of-way to KCATA, and in return KCATA agreed to convey its right, title and interest in the east 30 feet of the right-of-way to Twentieth Century. Finally, there were additional provisions for easements, annual fees and construction of improvements. This settlement eventually led to entry of summary judgment on Count II (declaratory judgment) and Count III (quiet title) of KCATA's petition,

and dismissal with prejudice of all counterclaims filed by Jennings, 4550 or Twentieth Century, all pursuant to joint motion of KCATA and Twentieth Century, on February 8, 1994.

■ This appeal is only from the judgment on BLBB's motion to enforce attorney's lien. In the "Points Relied On" section of their brief, Jennings and 4550 list five points in this appeal. However, in the "Argument" section, they argue only four points. In addition, we note that the points they do argue, while bearing some similarity to their "Points Relied On," are nevertheless substantially different. Rule 84.04(a) sets out what briefs must contain. Rule 84.04(e) requires that the "Argument" section of the brief "substantially follow the order of 'Points Relied On.'" Rule 84.13(a) provides that "allegations of error not briefed or not properly briefed shall not be considered in any civil appeal." Therefore, to the extent appellants' "Points Relied On" are not argued in the "Argument" portion of their brief, they will not be considered. The points argued and specified as a "Point Relied On" will be discussed in order.

Our standard of review in this case is the same as in other court-tried matters. *Kenney v. Leritz & Reinert, P.C.*, 811 S.W.2d 771, 773 (Mo.App.1991). We must defer to the trial court and affirm its judgment "unless there is no substantial evidence to support it, or it is against the weight of the evidence or it erroneously declares or misapplies the law." *Brownstein v. Rhomberg-Haglin & Assoc., Inc.*, 824 S.W.2d 13, 15 (Mo. banc 1992). "Credibility of witnesses and the weight to be given their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness. We assume the trial court believed the testimony and evidence consistent with its judgment, consequently, we accept as true the evidence and permissible inferences which may be drawn favorable to the prevailing party, and disregard the contradictory testimony." *Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App.1986) (citations omitted).

## I.

Jennings and 4550 argue first that the trial court exceeded its jurisdiction by enforcing the lien and entering a general judgment because (a) an attorney may not proceed by motion against his client in the underlying action, (b) the underlying suit had not been settled or reduced to judgment, and (c) the work done was defensive and did not result in an affirmative judgment for Jennings.

In the first part of this argument, Jennings and 4550 assert BLBB could not proceed by motion against them in the same suit in which it had represented them. They rely on *Random Acres Dev. Co. v. Tierney*, 579 S.W.2d 800 (Mo.App.1979). In *Random Acres*, attorney Poindexter brought suit against multiple defendants on behalf of the Random Acres Development Company. At 5:30 p.m. on the day suit was filed, a meeting of the board of directors of the corporation was held at which various of the defendants were elected officers of the corporation. The directors then adopted a resolution to terminate Poindexter's engagement as counsel. Subsequently, a second amended petition was filed, which was met by a motion to dismiss, and thereafter Poindexter moved to withdraw, and after a hearing he was permitted to do so. It is unclear from the opinion as to whether it occurred before or after the withdrawal, but at some point Random Acres dismissed its petition with prejudice. At any rate, about a month after being permitted to withdraw, Poindexter filed a motion for attorney fees, and the motion permitting withdrawal as counsel was rescinded. After hearings, the trial court awarded Poindexter $2,000 in attorney fees.

Relying on *Universal Oil Prods. Co. v. Standard Oil Co.*, 6 F.Supp. 37 (W.D.Mo. 1934), *aff'd sub nom. German v. Universal Oil Prods. Co.*, 77 F.2d 70 (8th Cir.1935), this court held on appeal that the trial court should have denied Poindexter's motion because the petition had been dismissed and therefore, the attorney "could not summarily proceed (by intervention) to collect compensation for legal services rendered." *Random Acres*, 579 S.W.2d at 802.

Appellants' reliance on *Random Acres* and *Universal Oil* is misplaced. In both cases, the plaintiff had dismissed its petition. There was no action pending in either case when the attorneys attempted to enforce their liens by motion. However, when the client's action is still pending and open, the rule in Missouri is quite clear that an attorney may proceed by motion for his fee in the client's case. In *Satterfield v. Southern Ry.*, 287 S.W.2d 395 (Mo.App.1956), in considering the issue of enforcement of an attorney's lien, the court stated:

> By the clear provisions of Section 484.130 RSMo 1949, V.A.M.S., an attorney has a lien for his services from the commencement of an action or the service of an answer containing a counterclaim, and this lien cannot be affected by any settlement between the parties before or after judgment. Although the statute explicitly affords an attorney protection for services rendered by creating a lien in his favor it fails to provide a method for enforcement thereof. But lack of a statutory remedy does not mean that the lien of an attorney must perish. The remedy for enforcing the lien is not only left to the court, but in the final analysis it is up to the court to determine whether the method selected by the attorney is appropriate under all the facts and circumstances. And an attorney is not restricted to any particular remedy in the foreclosing of his lien. He may proceed by an independent suit against the party who was the defendant in the original case. Or he may proceed against the same party by motion in the original case.

*Id.* at 397 (citations omitted). This language was quoted with approval by our Supreme Court in *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 56 (Mo. banc 1982). There are numerous other cases where an attorney was permitted to proceed in the underlying action to enforce his lien. *See Roberds v. Sweitzer*, 733 S.W.2d 444 (Mo. banc 1987); *Reed v. Garner Indus., Inc.*, 832 S.W.2d 945 (Mo.App.1992); and *Nelson v. Massman Constr. Co.*, 120 S.W.2d 77 (Mo. App.1938), *modified on other grounds sub*

*nom. State ex rel. Massman Constr. Co. v. Shain,* 344 Mo. 1003, 130 S.W.2d 491 (1939).

■ In the second prong of this point, Jennings and 4550 contend the trial court erred by allowing BLBB to foreclose its lien before the underlying suit had been settled or reduced to judgment. Appellants assert, quoting from § 484.130, that since there was no "verdict, report, decision or judgment in the client's favor" in existence at the time of the trial court's order on BLBB's motion, the court exceeded its jurisdiction because there was nothing tangible against which the attorney's lien could be enforced. The argument overlooks the facts of this case, the plain meaning of § 484.130, and the authorities upon which appellants relied in the previous sub-point. First, by the express language of § 484.130, the attorney's lien attaches to the "client's cause of action or counterclaim." Beckett had filed counterclaims on behalf of Jennings and 4550. He, and BLBB, therefore had a lien on those counterclaims, and they were still pending at the time the court entered its judgment on BLBB's motion. The fact that appellants had sold and assigned their interest in the KCATA lawsuit did not release the lien. Furthermore, the evidence at trial was that KCATA and appellants' assignee, Twentieth Century, had reached an agreement to settle the lawsuit. The terms of the settlement were in evidence. Section 484.130 further provides that the lien created "cannot be affected by any settlement between the parties before or after judgment." As noted in *Universal Oil,* "when there has been a settlement of a cause of action the cause of action merges in the agreement of settlement." 6 F.Supp. at 39. Since the cause of action was still pending and there was ample evidence of the settlement between KCATA and Twentieth Century, the court did not exceed its jurisdiction by foreclosing the attorney's lien prior to formal entry of a judgment pursuant to the settlement agreement disposing of the underlying action.

■ In the final sub-part of Point I, appellants contend Beckett's work was primarily defensive and there was no showing that Beckett and BLBB obtained a settlement or judgment in favor of Jennings and 4550.

■ While neither party has pointed us to any express Missouri authority holding that § 484.130 does or does not apply to attorney fees resulting exclusively from defending a client against a cause of action asserted by another against him, there are cases which suggest that an attorney's lien does not exist for such fees and, more importantly, we believe the unambiguous wording of the statute compels that conclusion. Before addressing the matter in more detail, we first comment on appellants' contention that Beckett and BLBB did not obtain a settlement or judgment for appellants. The argument is without merit. An attorney's lien can be imposed on judgments, verdicts or settlements when, through the efforts of the attorney, property or money are produced. *Kenney,* 811 S.W.2d at 773–74. As noted previously, the settlement agreement entered into by KCATA and Twentieth Century provided that KCATA would pay Twentieth Century $50,000, and that each party would convey its interest in certain parts of the right-of-way to the other, among other things. BLBB filed the counterclaims on behalf of Jennings and 4550, and performed many valuable services in the course of the lawsuit, and therefore, the law firm's efforts, at least partially, produced money and property for appellants' assignee, Twentieth Century. Thus, BLBB and Beckett had an enforceable attorney's lien.

■ We now return to the issue of whether an attorney's lien for fees exists where they are incurred solely in defending a client against an action brought against him. There are numerous cases which hold that the attorney's lien created by § 484.130 attaches to the client's cause of action. *See Reed,* 832 S.W.2d at 949; *Random Acres,* 579 S.W.2d at 801; *Nelson,* 120 S.W.2d at 87; and *Universal Oil,* 6 F.Supp. at 39. Moreover, the clear, unambiguous language of the statute provides that "[f]rom the commencement of an action or the service of an answer

containing a counterclaim, the attorney who appears for a party has a *lien upon his client's cause of action or counterclaim.*" § 484.130 (emphasis added). "Where statutory language is clear, unambiguous and admits of one meaning, there is no room for statutory construction." *Missouri Hosp. Ass'n v. Air Conservation Comm'n,* 874 S.W.2d 380, 392 (Mo.App.1994). It is obvious, therefore, that the attorney's lien attaches to the cause of action or counterclaim, and it does so at the commencement of the action or the service of an answer containing a counterclaim. When a client is sued, and retains counsel to defend him, the client is asserting no cause of action. It is only if a counterclaim is filed on behalf of the client that he is claiming to have a cause of action against the plaintiff. Thus, if there is no counterclaim, and the lawyer merely defends the client against the plaintiff's claim, the client has no cause of action upon which an attorney's lien can attach.

■ In this case, appellants' hired Beckett and BLBB to represent them in October, 1990 when they were named as defendants by KCATA. Beckett and BLBB provided valuable legal services to appellants in defending against that action, initially by, among other things, filing motions to dismiss and for partial summary judgment, as well as extensive suggestions in support. These efforts were directed toward defending appellants against KCATA's offensive action. It was not until January 2, 1992 that the trial court denied appellants' motions, and thereafter, on February 6, 1992, BLBB filed "an answer containing a counterclaim," § 484.130, on behalf of appellants. This fact, however, does not mean that an attorney's lien cannot be imposed for the fees incurred between October, 1990 and February 6, 1992.

■ Section 484.130 provides for the creation of an attorney's lien in cases where a cause of action is asserted on behalf of the client. The property interest upon which the lien attaches is the client's cause of action. Under the statute, it matters not whether all fees are incurred in pressing the client's offensive action, or whether some result from defending the client against a counter-offensive by the other party or parties, so long as it is part of the same case. The statute makes no distinction as to how the attorney's fees are incurred in the case, but rather creates a lien for the fees which attaches to the client's cause of action. It is only if the client recovers on his cause of action that there will be a tangible asset subject to the lien and from which the attorney fees can be collected by foreclosing the lien. Thus, in the case at bar, the fees charged for services rendered prior to filing appellants' counterclaim on February 6, 1992 are properly the subject of the attorney's lien against that cause of action. Point denied.

## II.

■ In their second point on appeal, Jennings and Beckett assert that the trial court erred in awarding Beckett a substantial fee because his conduct with regard to his clients in the underlying action disqualified him from receiving a fee. They generally argue that Beckett failed to communicate with his clients about his fees and the progress of the case, and failed to secure permission to hire experts. Appellants' point is without merit and may be dealt with in cursory fashion.

The trial court found that Wilson acted as agent for Jennings and 4550 in hiring Beckett and BLBB, and instructed them to communicate with Wilson, and that they did so. The court further found that Jennings had meetings with Beckett, the fees were discussed, and that Jennings signed interrogatory answers under oath acknowledging the amount of fees incurred through June, 1992, and declaring his claim to a recovery of $2 to $3 million dollars. There is ample evidence in the record to support these findings, and to dispel appellants' assertion that Beckett and BLBB failed to responsibly deal with their clients. Since there is substantial evidence in the record to support the trial court's decision, we cannot say the trial court abused its discretion in making the findings it did. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Point denied.

### III.

Jennings and 4550 argue, in Point III, that the trial court erred in awarding $139,882.41 in fees and expenses to BLBB on a theory of *quantum meruit* because the award was not supported by the evidence. They argue the court failed to examine or make findings with respect to the eight factors set out in Rule 4, 1.5(a), to be considered in determining the reasonableness of a fee. They also contend that BLBB failed to prove the reasonable value of its services. Furthermore, appellants' contend there was insufficient evidence of the number of hours charged, the tasks undertaken and the need for the work, and that there was no evidence the amount claimed was justly proportioned to the result achieved.

In evaluating this point, we note first that appellants made no request for specific findings as to the factors set out in Rule 4, 1.5(a). The trial court was under no obligation to make such findings unless requested. *McMickle v. McMickle,* 862 S.W.2d 477, 483 (Mo.App.1993); Rule 73.01(a)(3). Furthermore, all fact issues upon which no specific findings are made must be considered as having been found in accordance with the result reached. Rule 73.01(a)(3). Moreover, neither of the cases cited by appellants in support of their argument that Rule 4, 1.5(a) must be used to determine the reasonable value of legal services, *International Materials Corp. v. Sun Corp.,* 824 S.W.2d 890 (Mo. banc 1992), and *Plaza Shoe Store, supra,* hold that the rule is mandatory. Thus, the trial court did not err in failing to enumerate each of the factors referred to in the rule in its findings.

Next, Jennings and 4550 contend that Beckett and BLBB had the burden of proving the reasonable value of the services rendered, and that they failed to meet that burden. During trial, Beckett testified about the work performed and the amount of the charges. Exhibit 8, reflecting the firms' time records, was introduced into evidence. In addition, BLBB presented an expert witness who testified that, in his opinion, BLBB's time records and billings were reasonable. However, the thrust of much of this evidence was to show that the fees were reasonable in relation to the sale transaction between appellants and Twentieth Century, and that BLBB's services in some fashion brought about, enhanced or were an essential part of the sale of the 4550 property. Indeed, in reaching its decision that the reasonable value of the services rendered by BLBB was $123,235.00, the court made findings that BLBB provided valuable legal services in "counseling [Jennings and 4550] on the value of their property which included the right-of-way ultimately sold to Twentieth Century Realty, Inc.," and that the "transactions involving Jennings, 4550 and Twentieth Century were so integrated with, influenced by and indistinguishable from the efforts and services rendered in this subject lawsuit . . . and . . . these intertwined, overlapping and inseparable services by the Beckett law firm benefitted and pervasively influenced all aspects of the . . . sale . . . to Twentieth Century. . . ."

It is clear these findings significantly influenced the trial court's determination of the reasonable value of the services rendered by BLBB because that finding immediately follows those quoted above. This conclusion is bolstered by the fact that the court imposed the attorney's lien on the entire proceeds of the sale to Twentieth Century. However, the court's quoted findings are unsupported by the record. They are not only against the weight of the evidence, but there is insufficient evidence to sustain them.

The record is clear that Beckett did not discuss the value of the 4550 property with Jennings until the meeting of July 22, 1992. It is likewise clear that he did not provide Jennings with documentary information about value until that meeting. However, Twentieth Century offered to buy the 4550 property for $2,450,000 in a letter to Jennings on *July 10, 1992.* While there were further negotiations after that date culminating in the contract of September 4, 1992, it is apparent that appellants and Twentieth Century had essentially arrived at the ultimate

purchase price before Beckett ever discussed value with Jennings or provided information thereon. Thus, it cannot be said that BLBB provided valuable services in counseling Jennings on the value of the 4550 property or that BLBB's services were intertwined with, and pervasively influenced the appellants' sale to Twentieth Century. Therefore, since the trial court based its decision on the reasonable value of the services rendered on these unsupported findings, the trial court's decision must be reversed and the cause remanded for a determination of the reasonable value of the services rendered in the underlying lawsuit.

## IV.

In the final point argued in their briefs, appellants contend the trial court erred in ordering Jennings to pay Beckett $16,000.00 in expert witness fees. We observe first that the actual amount was $15,-642.06. Nevertheless, since the trial court determined the reasonable value of "services rendered and *expenses*" based on the erroneous findings discussed in Point III, we must likewise sustain appellants' position on this issue and reverse and remand for a determination of the reasonable value of the expert witness fees as applicable to the underlying lawsuit.

## V.

Since this case must be remanded for further proceedings, for the sake of judicial economy, we comment on several matters that may arise. First, without deciding whether the trial court's decision to impose BLBB's attorney's lien on the entire proceeds of the sale to Twentieth Century in the first instance was proper, we can say that there is no basis to subject those proceeds to the lien on remand. Since the evidence does not support the proposition that BLBB's services were intertwined with and pervasively influenced the sale transaction, BLBB's services can only be said to be applicable to the

underlying lawsuit, and it is only the settlement provisions in that suit which can properly be the subject of BLBB's lien. Second, we observe that BLBB's fees from the inception of its representation of appellants in the KCATA litigation in October, 1990 through the end of June, 1992 were $56,000. By November 24, 1992, the amount had risen to $123,235, an increase of $67,235 in less than five months. We likewise observe that many of BLBB's time records after June, 1992, as reflected by Exhibit 8, reference work on the attorney's lien matter, and further that there are numerous entries after November 24, 1992, the date their services were terminated. Obviously, in determining the services rendered to appellants in the underlying suit, and the reasonable value thereof, the time and effort expended by BLBB in trying to foreclose its attorney's lien and collect its fees cannot be considered services rendered to the client and likewise, with limited exceptions relating to winding up the representation, seeking leave to withdraw, taking care of time sensitive matters pending at the time of discharge and similar activities, appellants cannot be burdened with payment for services rendered after they discharged BLBB. Finally, we note that BLBB's time records contain numerous entries covering literally hundreds of hours for which the only notation is "Attn. Case." [2] While we recognize that trial courts are experts in determining the reasonable value of legal services, *Fisher v. Peterson,* 240 S.W.2d 176, 179 (Mo.App. 1951), where, as here, attorneys seeking a judgment for their fees rely almost exclusively on time records to justify those fees, the trial court should carefully consider any time records which do not contain some explanation of the services rendered in determining the reasonable value of the attorneys' services.

## CONCLUSION

The judgment is reversed and the case is remanded to the trial court with instructions to:

2. By our rough calculation, Beckett had "Attn. Case" entries for nearly 200 hours between July 1, 1992 and September 30, 1992, and for many more before and after those dates.

a) determine the services rendered by BLBB to appellants in the KCATA litigation from the inception of BLBB's representation through its discharge and winding up of such representation;

b) determine the reasonable value in *quantum meruit* of services rendered by BLBB in the KCATA litigation from the inception of BLBB's representation through its discharge and winding up of such representation, impose an attorney's lien on behalf of BLBB on the value of Twentieth Century's settlement with KCATA, and enter judgment for the value of such services;

c) determine the expert witness services rendered on behalf of appellants pursuant to BLBB's request in the KCATA litigation, as well as the reasonable value of such services, and BLBB's reasonable out-of-pocket expenses, and include those amounts in the attorney's lien being imposed on the Twentieth Century settlement with KCATA, and in the judgment being entered on behalf of BLBB.

All concur.