In the Estate of Jerry D. MARKLEY,
Deceased.

Don and Heath MARKLEY, Appellants,

v.

John H. EDMISTON, Adm. d/b/n; and
Donna Markley, Respondents.

No. WD 50542.

Missouri Court of Appeals,
Western District.

May 21, 1996.

Donald P. Herron, Belleview, for appellants.

John Henry Edmiston, James E. Baker, Warrensburg, for respondents.

Before HANNA, P.J., and SMART and ELLIS, JJ.

HANNA, Presiding Judge.

Appellants, Don and Heath Markley, appeal from the trial court's judgment denying Don Markley's claims concerning monies that he alleged were owed to him by the estate of his son, Jerry Markley, for partnership debts and loans made, as well as a claim for improvements made to a horse trailer, which was sold at the estate sale. Also at issue is the court's judgment finding that all of the estate cattle and horses had been properly accounted for, and that certain cattle equipment was the separate property of Donna Markley.

Jerry Markley died on July 7, 1992. He was survived by his minor son, Heath; his wife, Donna; and his mother and father, Bertha and Don Markley. Donna was originally appointed as administrator of the estate. She resigned in November 1993, and the court appointed John H. Edmiston as Administrator D.B.N.

Jerry Markley and his father, Don Markley, were business partners in Markley Construction from 1969 until Jerry's death. There was no written partnership agreement, but they were equal partners and shared the partnership profits equally. The partnership's financial records consisted of a check-

book, partnership tax returns, and other information prepared for insurance purposes. At the time of Jerry's death, the partnership's assets were valued at $66,537.66. Among the partnership assets was a certificate of deposit.

Other partnership property included a tractor and a baler. Shortly before Jerry's death, Don and Jerry temporarily stored this equipment in one of the barns on Don's farm while they were out of town. The tractor and baler were destroyed during a fire. Don had a homeowners insurance policy covering buildings on the farm, as well as the personal property in these buildings. He paid the premiums for this policy with his own funds. Don received a settlement pursuant to his policy in the amount of $12,000 for the tractor and baler, which Don did not disclose.

Don testified that he made two loans to Jerry. The first was made in 1969, for $35,000 for the purpose of allowing Jerry to buy into the partnership. The second loan was for $20,000 made in 1980 or 1981, for the purchase of a home. There was no written agreement between the parties concerning these alleged loans.

Jerry also owned a Hart horse trailer, which Don claimed that Jerry gave to him before he died. However, the title to this trailer was not transferred to Don until he purchased the trailer at the estate sale. While Don claimed that he spent over $900 improving the trailer, he could only account for $455.40 of his expenditures.

At the time of Jerry's death there were 15 cows, 13 calves, and one bull pastured on his land. Of the 15 cows, 10 were owned by Donna prior to the marriage, two were owned by Jerry prior to the marriage, two were purchased by Donna and Jerry during the marriage, and one cow was owned by Heath. Of the 13 calves, 10 were from Donna's calves, two were from Jerry's calves, and one calf belonged to Heath. The bull was purchased during the marriage by Jerry and Donna.

Shortly after Jerry's death, Donna moved all of the cattle off the Markley farm for safekeeping. In 1993, Donna sold Jerry's two calves and paid the proceeds to the estate. Thereafter, she turned over Jerry's two cows and two calves, born after Jerry's death, to John Edmiston, Administrator, D.B.N. At the time of trial, Donna had possession of one cow, one yearling, and one calf, born after Jerry's death, which were owned by Heath.

There were also three horses pastured on the land at the time of Jerry's death. Two were purchased prior to the marriage by Jerry. He gave one of these horses to Donna for her birthday. Donna purchased the third horse from her separate account.

Donna and Jerry also owned cattle equipment used in their livestock operation. This equipment included a cattle chute, a cattle guard, and an automatic cattle waterer, which were located on Jerry's farm. All of these items were purchased jointly by Donna and Jerry.

Don Markley filed a claim against the estate for money owed him from the partnership and for personal loans made to his son. He also filed a claim against the estate for improvements made to the horse trailer. Additionally, Don and Heath filed a Petition for Damages, to Discover Assets and for Accounting. Edmiston, as Administrator D.B.N., also filed a Petition to Discover Assets and for Accounting.

After hearings, the court found certain property to be that of the partnership and not the sole property of Don, including the $12,000 that Don received from his insurance company for the loss of the tractor and baler. The court further ordered Don to file an accounting of the partnership estate within thirty days. The court also found that all estate cattle and horses had been properly accounted for and that the cattle equipment at issue was the separate property of Donna. The court denied Don's claim for improvements to the trailer and for the monies he alleged that he was owed for partnership debts and loans made to his son. Don and Heath appeal. The first nine points are against Edmiston, as Administrator, D.B.N., and the final three counts are against Donna Markley. Don's third point is nothing more than a reiteration of his first two points and need not be discussed separately.

In a court tried case, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court has erroneously declared or applied the law. *Id.* at 32.

In their first point, the appellants contend that the court erred in admitting Respondent's Exhibit B as "the only credible evidence" of the value of the partnership shares. Exhibit B appears to be a balance sheet for the partnership, containing the value of each partner's capital account in 1990. It was found in the partnership's tax file kept by its accountant, Gary Parmley.

The appellants argue that there was no foundation for the document in that Parmley testified that he did not recall the document, did not know why it was prepared, and that he had never prepared any workups for the capital accounts of the partnership.

In reviewing the admissibility of evidence in a court-tried case, we are mindful that the trial court is allowed wide latitude in the admission of evidence because it is presumed that it will not give weight to evidence that is incompetent. *Blackburn v. Richardson*, 849 S.W.2d 281, 291 (Mo.App.1993). Because of this, it is difficult to base reversible error on the erroneous admission of evidence in a court-tried case. *Id.* Except when a trial court relies on inadmissible evidence in arriving at its findings, such evidence is ordinarily held to be nonprejudicial. *In re Marriage of Clark*, 801 S.W.2d 496, 499 (Mo.App. 1990). However, incompetent evidence on a material issue is presumed to be prejudicial unless clearly shown to be otherwise. *Farris v. Mitchell*, 745 S.W.2d 262, 265 (Mo.App. 1988).

The value of each partner's capital account was a material issue. The court's findings here show that it did rely on Exhibit B as the "only credible evidence as to the values of the respective partnership capital accounts". Using this evidence the court determined that Don's capital account had a balance that was $15,702.65 greater than the balance in Jerry's capital account. The court then in-structed Don to equalize these capital accounts, which would reduce the total partnership capital by $15,702.65, from $82,874.96 to $67,172.31. The court ordered that this remaining capital, $67,172.31, be divided equally between Don and the estate. Thus, each party was entitled to $33,586.15 from the remaining partnership capital.

We note, however, that, contrary to Don's argument, the court's reliance on Exhibit B did not form the basis of its denial of Don's claim concerning salary draws and personal loans. Rather, the document's sole purpose was to determine how much money each partner was entitled to from the remaining partnership capital. Therefore, if Exhibit B was inadmissible, it necessitates reversal for the sole purpose of dividing the partnership capital.

Section 490.680, RSMo 1994, which sets forth the foundational requirements that must be met before a document will be admitted under the business record exception to the hearsay rule, provides:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The trial court has broad discretion in determining whether a party properly complied with this provision. *Waldron v. Ragland*, 716 S.W.2d 861, 862 (Mo.App.1986).

During his testimony, Parmley testified that he did not remember preparing the document, although it was in his handwriting and it came out of the Markley tax file, of which he was the keeper. He speculated that it was probably for an insurance bonding. When asked if he remembered what the balance of the capital accounts were in 1990, Parmley replied that he "would have no reason to work up the capital accounts because they were not a required part of the tax return." Parmley stated that the only work sheet that would have reflected the balance

of the capital accounts in 1990, would have been "some sort of balance sheet for the insurance bonding." However, Parmley did not know whether Exhibit B represented such a balance sheet.

The court sustained Don's objection to Parmley's testimony that the document would have been requested for an insurance bonding on the grounds that Parmley did not remember the document, did not know what the information in the document represented, and was speculating as to why the document was prepared. The court again sustained Don's objection when respondent asked Parmley if the document was a true and correct copy of a document he would have prepared in his capacity as the partnership's tax preparer. The court sustained Don's third objection concerning this document, when the respondent asked Parmley if the document was prepared for the insurance bonding, again because Parmley did not recall what the document was or why it was prepared. However, when Don objected to the admission of Exhibit B on the same grounds that the court had sustained the three earlier objections, the objection was overruled and the document was admitted into evidence.

The respondent failed to establish the foundation necessary to qualify the exhibit as competent evidence under the statute. Parmley was not able to identify the document. He could only speculate that it "was some sort of balance sheet for the insurance bonding." Such speculation is insufficient to meet the foundational requirement as to identification under § 490.680. *Nickels v. Nickels,* 817 S.W.2d 632, 637 (Mo.App.1991). ■ He did not testify as to the mode of preparation, because he did not recall why the document was prepared. Respondent is correct that personal knowledge of the sponsoring witness as to the mode of preparation of the documents sought to be admitted as business records is not required for the admission of those documents. *Rouse Company of Missouri, Inc. v. Justin's, Inc.,* 883 S.W.2d 525, 530 (Mo.App.1994). However, this does not mean that no testimony concerning the mode of preparation need be given.

In *Rouse,* the sponsoring witness testified that she was familiar with the bookkeeping and recordkeeping procedures of her employer, even though she was not employed when the specific document in question was prepared. *Id.* The court found this testimony sufficient foundation as to the mode of preparation. *Id.* Here, because Parmley did not know what the document was, he presented no testimony as to the mode of preparation. He did not testify as to the normal procedures in preparing documents for either tax or insurance bonding purposes.

The only testimony from Parmley supporting the document's admission was that it was in his handwriting and it came out of the Markley tax file, which was in his possession. However, because there was no testimony as to what the document was, and why or how it was prepared, the court improperly admitted this document into evidence. *See Nickels,* 817 S.W.2d at 636–39. Consequently, there was no basis for the court's finding that the value of Don's capital account was $15,702.65 greater than the balance in Jerry's capital account. In light of the court's finding that Exhibit B was the only credible evidence of the partners' capital account balances, the matter is reversed and remanded to the trial court to make an equal division of the partnership capital.

Don also argues that there was insufficient evidence to support the court's finding that no money was owed to Don from Jerry's estate. He contends that the clear evidence showed that Don was entitled to all of the partnership assets as surviving partner. He also asserts that he was entitled to an additional sum from the estate because the only credible evidence showed that the amount that the partnership owed Don exceeded the sum of the partnership assets.

■ However, Don, as the claimant, had the burden of proving his claim against the estate arising out of the partnership. *Russell v. Estate of Chapman,* 789 S.W.2d 504, 508 (Mo.App.1990). The trial court found that Don failed to meet his burden of proof. The estate was not required to present any evidence for the court to enter judgment in its favor.

■ Don testified that the salary draws taken by Jerry exceeded those taken by Don by $82,999.15. He attempted to substantiate this claim through check stubs taken from the partnership checkbook. Parmley testified that, based upon the check stubs he reviewed, there was a $82,999.15 difference between the draws of the partners. This calculation was set forth in a "salary draw analysis."

However, Don testified that it was possible that there were missing check stubs. Parmley testified that he was not representing that his salary draw analysis consisted of all of the checks written to either Don or Jerry from the partnership account. Further, he testified that he was not making any effort to tell the court that the check stubs represented draws for salary. Rather, he stated, that these stubs simply reflected money that Don and Jerry removed from the partnership. The fact that Don testified that he loaned Jerry $20,000 in 1980 or 1981, which came out of the partnership account, casts further doubt on his assertion that all of the check stubs represented salary draws. No canceled checks or bank records were submitted to substantiate Don's claim. The trial court did not err in finding that Don failed to meet his burden of proof as to his claim. Point denied.

In the next two points, Don argues that the trial court erred in ordering him to account and pay to the estate the sum of $33,586.16 in that there was no claim against Don, and the calculation of $33,586.16 was based on Exhibit B, which was inadmissible. Don also complains that the trial court erred in ordering him to account for the partnership assets because he had already submitted such an accounting at trial.

However, the court never ordered Don to pay any amount of money to the estate. Rather, the court found that Don and the estate were each entitled to receive their respective share of the remaining partnership capital, which it determined to be $33,586.16. The court correctly ordered Don to account to Jerry's estate for his share of the partnership capital account in that it was Don's duty, as surviving partner. *See Chapman v. Dunnegan*, 665 S.W.2d 643, 647 (Mo.

App.1984); § 473.223, RSMo 1994. However, this issue has been resolved by our holding in point one, in which we remanded to the trial court to divide the remaining partnership capital equally between Don and the estate.

■ Don also argues that the court erred in ruling that the proceeds in the certificate of deposit were a partnership asset and awarding a portion of this asset to the estate. Don contends that the CD was jointly titled in his and Jerry's names, so that title vested in him alone upon the death of Jerry.

The CD was titled "Markley Constr. Co. by Don or Jerry Markley". Don argues, without authority, that because the partnership is not a separate legal entity, it cannot hold title to the CD. Consequently, he continues, title must lie in the individuals named on the CD. Don then assumes that, because the CD is titled in both their names, they owned the CD as joint tenants. Thus, pursuant to § 362.470, RSMo 1994, which controls joint deposits, the CD became Don's sole property upon Jerry's death.

■ In determining whether an asset standing in the names of individuals who are partners is to be treated as partnership property, a court may ascertain, from the individuals' conduct and their course of dealing, the understanding and intention of the partners themselves, which, when ascertained, unquestionably should control. *Stafford v. McCarthy*, 825 S.W.2d 650, 656–57 (Mo.App. 1992).

The evidence stated in the light most favorable to the court's decision shows that Don and Jerry intended that the CD and its proceeds be partnership property. First, it was titled "Markley Constr. Co. by Don or Jerry Markley". Second, the $22,000 used to purchase the CD in 1982, was money earned by the partnership. The balance of the CD consisted of the original $22,000 earned by the partnership plus the accrued interest. Neither Don or Jerry contributed any money to the CD individually. Finally, the partnership claimed the interest from the CD on its partnership tax returns from 1988 through 1991. Given this evidence, the trial court

correctly concluded that the CD was partnership property.

■ Don also asserts that even if the CD was partnership property, the title vested in him upon Jerry's death pursuant to § 358.250.2(4), RSMo 1994, which provides that "on the death of a partner his right in specific partnership property vests in the surviving partner...." However, the statute continues to read, "[s]uch surviving partner ... has no right to possess the partnership property for any but a partnership purpose." *Id.* The CD was partnership property. Point denied.

■ Next, Don argues that the trial court erred in finding that the $12,000, which he received under his personal homeowner's insurance policy for the loss of partnership property, was a partnership asset. He acknowledges that the tractor and baler were partnership property, but argues that since his insurance company paid for the equipment's loss due to the fire on his property, then in some manner, not fully explained, the insurance proceeds became Don's sole property. Don's argument is that the partnership property was destroyed and Don's personal insurance policy paid him for the loss, therefore, the partnership property was converted into Don's personal property.

Don's homeowners policy covered the buildings on his farm, as well as the personal property contained therein. Jerry and Don temporarily stored a tractor and baler in a barn on Don's farm. The barn subsequently burned, and the tractor and baler were destroyed. When Don filed a claim with his insurance company, he improperly listed this equipment as his personal property.[1] Because he listed the tractor and baler as his personal property, Don recovered the $12,000 for the loss of the partnership equipment.

■ As a partner in Markley Construction Company, Don Markley owed a fiduciary duty to his other partner, Jerry. *Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A.,* 803 S.W.2d 23, 31 (Mo. banc 1991). Because he occupies a fiduciary posi-

tion, Don is precluded from gaining any personal advantage from the subject of the trust or confidence. *Decker v. Fittge,* 365 Mo. 139, 276 S.W.2d 144, 149 (1955). Don attempted to take personal advantage of the destruction of the tractor and baler by claiming them as personal property on his insurance claim. The $12,000 that he received under his insurance policy was an undue benefit from the destruction of partnership property, which he failed to disclose. Don now asks this court to reward his deception by permitting him to keep the entire $12,000. The court correctly found that the $12,000 that Don received for the loss of partnership property was a partnership asset. Point denied.

■ Don contends that the trial court erred in finding that no money was owed to him from the estate for two unpaid personal loans made by Don to Jerry. The first loan was for $35,000 and was made in 1969. The second loan was for $20,000 and was made in 1980 or 1981.

Don Markley concedes that these loans were never reduced to writing. The only written evidence of these loans was contained in a "Statement of Marital Property, Non–Marital Property and Liabilities," filed by Jerry in 1987, in the Circuit Court of Jackson County, Missouri, when he divorced his first wife. Jerry did not give this document directly to Don, nor did Don ask him to draw up such a document. Because the debts were not in writing and more than five years elapsed since the loans were incurred, Don Markley's claim was barred by the five year statute of limitations, set forth in § 516.120, RSMo 1994. *Little v. Fugate (In re Estate of Whitehead),* 895 S.W.2d 129, 131 (Mo.App. 1995). At trial, the estate argued that the alleged personal loans were barred by the ten-year statute of limitations of § 516.110, RSMo 1994. Under either statute, the personal loans were time barred, as Don Markley did not bring his claim until 1993, some 12 years after the second loan was made.

Don Markley contends that the Statement of Marital Property was a written acknowl-

---

1. Don argues that the partnership property was covered by his homeowners policy in that it covered the buildings, as well as the contents of the buildings. A review of record shows that only Don's personal property in the buildings was covered by his insurance.

edgment of a debt. If this document is a written acknowledgment it would remove the bar of the statute of limitations. *Forry v. Department of Natural Resources,* 889 S.W.2d 838, 843 (Mo.App.1994).

■ Don Markley is correct that there is no required form or format regarding the acknowledgment of the debt, and the promise to pay may be implied. *Id.* However, such an acknowledgment must contain an unqualified and direct admission of a present subsisting debt. *Id.* The document here merely represents a statement of the liabilities of Jerry Markley and his first wife. It contains no promise to pay. It does not mention the terms of the repayment. Furthermore, this document was prepared for purposes of Jerry Markley's divorce and was not sent to Don Markley. This document does not constitute a written acknowledgment of the debt. *See id.* Point denied.

■ Don claims that the trial court erred in finding that he was owed nothing on his claim for improvements to the hart horse trailer. Specifically, he contends that the evidence clearly shows that Jerry gave the trailer to him as a gift, that Don expended a large amount of time and money renovating the trailer, and that it was sold by the estate with the proceeds going to the estate.

However, the only evidence presented to show that Jerry gave the trailer to Don was Don's own testimony. Despite Don's claim that Jerry made a gift to him of the trailer, Jerry Markley retained the certificate of title, evidencing his continued ownership in the trailer. The title was not transferred to Don Markley until after he purchased the trailer at the estate auction. Similarly, the only evidence concerning improvements was Don's testimony that he had spent $900 remodeling the trailer. When Don was questioned about actual expenses, however, he was only able to account for $455.40.

■ The trial court had the opportunity to judge the credibility of the witnesses and to determine the weight to be given to their testimony. The court is free to believe all, part, or none of the testimony of any witness. *Cunningham v. Hughes,* 889 S.W.2d 864, 868 (Mo.App.1994). Thus, the court was under no obligation to believe Don Markley's testimony that he received the trailer as a gift from Jerry. Given that Jerry Markley retained the certificate of title to the trailer, we find substantial evidence to support the trial court's determination that Don Markley failed to prove that he received the trailer as a gift and was entitled to reimbursement for the improvements. Point denied.

■ The appellants next contend that the trial court erred in finding that all of the estate cattle had been properly accounted for, that Heath Markley was only entitled to receive one cow and two calves, and that the remaining cattle became the property of Donna Markley upon Jerry's death.

All of the evidence concerning ownership of the cattle was presented through the testimony of Donna, Heath, and Don Markley. The appellants assert that Donna Markley's testimony was discredited because she did not list any cattle on her property tax report to Johnson County, Missouri in 1989, the year she married Jerry Markley. Consequently, the appellants conclude, the trial court should have believed the testimony of Don and Heath Markley.

■ Essentially, Don Markley is asking this court to reassess the trial court's determination of credibility. However, credibility of witnesses and the weight to be given to their testimony is for the trial court. *Kansas City Area Transp. Auth. v. 4550 Main Assocs.,* 893 S.W.2d 861, 866 (Mo.App. 1995). We assume that the trial court believed the testimony and evidence consistent with its judgment. *Id.* Consequently, we accept as true the evidence and permissible inferences, which may be drawn favorable to the prevailing party, and disregard the contradictory testimony. *Id.* There is no reason to lengthen this opinion by reciting all of the testimony concerning the cattle. Such testimony was contradictory, and we assume that the court believed the testimony of Donna Markley as to the ownership of the cattle. There was substantial evidence supporting the court's findings that all of the cattle had been accounted for and Heath Markley was only entitled to one cow and two calves. Point denied.

**96**

The appellants next argue that the trial court erred in finding that all of the estate horses had been properly accounted for and finding that two horses were the separate property of Donna Markley.

We do not assess credibility and again assume that the trial court believed the testimony of Donna Markley. *Id.* According to Donna's testimony, there were three horses pastured on the land at the time of Jerry's death. Two were purchased by Jerry prior to the marriage. He gave one of these horses to Donna for her birthday. Donna purchased the third horse from her separate account. There was substantial evidence to support the trial court's finding that two of the horses were the separate property of Donna Markley. Point denied.

In their final point, the appellants contend that the trial court erred in finding that certain cattle equipment became the property of Donna Markley upon the death of Jerry Markley. Appellants argue that "[t]he cattle clearly belonged to Jerry Markley and any equipment affiliated with those cattle must be property of the estate."

Again, this point fails because the trial court is the judge of the witnesses' credibility. The evidence upon which the trial court could have relied shows that Donna and Jerry Markley owned the cattle equipment used in their livestock operation. This equipment was purchased jointly by Donna and Jerry Markley. Point denied.

The judgment is affirmed, except that we remand the matter to the trial court for the sole purpose of making an equal division of the partnership capital.

SMART and ELLIS, JJ., concur.